<link href="https://doc-stylesheets.vlex.com/ldml-xml.css" rel="stylesheet" type="text/css">

27 P. 17

1 Colo.App. 22

MELSHEIMER v. SULLIVAN.

Court of Appeals of Colorado

June 23, 1891

Appeal
from district court, Arapahoe county.

Browne
& Putnam, for appellant.

W.B.
Felker, for appellee.

RICHMOND,
P.J.

Appellee
herein brought this action to recover for injuries received
from being bitten and otherwise injured by a
dog kept by the appellant, and which, it is alleged,
appellant knew was accustomed to attack and bite mankind.
Appellant answered, specifically denying the allegations in
the complaint, and as an additional defense claimed that the
injury received was the result of appellee's negligence.
The record discloses the fact to be that appellant is the
owner of a brewery, and in the alley adjoining the brewery,
part of the premises belonging to him, he kept a dog chained
in a kennel near the entrance to the cellar where he had
stored his malt; that the length of the chain was between
five and eight feet; that appellee, a policeman, was in
pursuit of a suspicious character, and, believing that he had
entered this alley, went into it hunting for the person, and
that while so engaged he, without seeing the dog or the
kennel, or having any knowledge of the fact that the dog was
there, advanced near enough to the kennel to be bitten by the
dog; that the alley, though private, was easy of access at
one end, and frequented by employes of appellant and others.
The ownership of the dog and his ferocity were confessed at
the trial, and are admitted in the argument here. It is also
shown that appellee received considerable medical attention
for a period of 9 days, and that he was unable to do any work
of any consequence for a period of 16 days. The disposition
of the dog to bite mankind was not only established by the
admissions of the appellant, but also by evidence of other
witnesses, and especially by his former master. The appellant
testified that he kept the dog chained in the same place at
all times, never suffered him to go at large, and kept him
for the purpose of protecting his premises from strangers and
tramps;

that if a stranger should approach the kennel the dog would
certainly bite him. Trial by jury. Verdict for plaintiff in
the sum of $800. On motion for a new trial, the court
requested plaintiff to remit $300, which was done, and
judgment on the verdict for $500 was entered. To reverse this
judgment this appeal is prosecuted.

In the argument of the case appellant says that
the true question involved is, "May the owner of
property keep on his own premises a vicious dog, when
constantly confined on the premises, and kept from running at
large, for the protection of his property?" He answers
this in the affirmative, and displays much facetiousness,
ability, and ingenuity in presenting his side of the
proposition. We will accept the foregoing proposition in the
following language: "That one is not liable for the
damages caused by his dog, though he knows he has vicious
propensities, if he exercises proper care and diligence to
secure him so that he will not injure any one who does not
unlawfully provoke or intermeddle with him." But this
principle is not applicable to the circumstances in this
particular case. The appellee assumed that, in the pursuit of
his duty, he had a right to enter this alley in search of the
person whom he was seeking. True it is that he was there
voluntarily, but he was there innocently; and, being there
under those circumstances and receiving the injury which he
did, we feel no hesitancy in saying that he was entitled to
recover.

This
question has received the attention of some of the ablest
judges in this country and in England, and a careful review
of the cases leads us to the conclusion that the gist of the
action is in the keeping of the animal after knowledge of its
mischievous disposition. In Marble v. Ross, 124 Mass. 44,
MORTON, J., lays down this rule: "The law imposes a
stringent responsibility upon a man who knowingly keeps a
vicious and dangerous animal. He is liable to any person who,
without contributory negligence on his part, is injured by
such animal, and he cannot exonerate himself by showing that
he used care in keeping and restraining the animal. He takes
the risk of being able to keep him safely so that he shall
not injure others. The owner's negligence is in keeping
the animal knowing that it is dangerous." In Muller v.
McKesson, 73 N.Y. 196, the rule is announced that, "in
an action against the owner of a ferocious dog or other
animal, for injuries inflicted by it, the gravamen of the
action is the keeping of the animal with
knowledge of its propensities; and, as to the latter, proof
that the animal is of a savage and ferocious nature is
equivalent to express notice." "The owner is bound
to keep the animal secure at his peril, and, if it does
mischief, negligence is presumed. This presumption cannot be
rebutted by proof of care on the part of the owner in keeping
or restraining it, and he is absolutely liable, unless
relieved by proof of some act or omission on the part of the
person injured." In Partlow v. Haggarty, 35 Ind. 178, it
was held that "whoever keeps an animal accustomed to
attack or bite mankind, with knowledge of its dangerous
propensities, is prima facie liable to an action for damages
at the suit of any person attacked or injured by the animal,
without proof of any negligence or fault in the securing or
taking care of it. The gist of the action is the keeping of
the animal after knowledge of its mischievous
disposition." In Sherfey v. Bartley, 4 Sneed, 58, it is
said: "The defendant knew his dog was vicious, and
disposed to attack and bite persons, and was bound to have so
confined him as to prevent him from doing mischief."
Brooks v. Taylor, 65 Mich. 208, 31 N.W. 837, was an action
for injuries inflicted by a bull, and it was held that
"the negligence in such a case consists in keeping such
an animal after notice of its dangerous habits; and whoever
keeps an animal accustomed to attack and injure mankind is
prima facie liable in an action on the case at the suit of
any person injured, without any averment of negligence or
default in securing and taking care of the animal. If in such
a case it is shown, as a matter of defense, that the
plaintiff willfully provoked the animal, or was grossly
negligent in going near it, with knowledge of its vicious
habits, he cannot recover." In Earl v. Van Alstine, 8
Barb. 630, after reviewing the various authorities, SELDEN,
J., says: "The authorities seem to point to the
following conclusions: First, one who owns or keeps an animal
of any kind becomes liable for any injury the animal may do,
only on the ground of some actual or
presumed negligence on his part; second, it is essential to
the proof of negligence, and sufficient evidence thereof,
that the owner be shown to have had notice of the propensity
of an animal to do mischief; third, proof that the animal is
of a savage and ferocious nature is equivalent to proof of
express notice." Pickering v. Orange, 1 Scam. 492; Brice
v. Bauer, 108 N.Y. 428, 15 N.E. 695. The principle here
contended for by appellant is most thoroughly covered in
Laverone v. Mangianti, 41 Cal. 138. In that case RHODES,
C.J., delivering the opinion of the court, said: "It is
insisted, on behalf of the defendants, that a person may
lawfully keep a ferocious dog,--one that is accustomed to
bite mankind. That position may be conceded, and it may also
be conceded that he has the same right to keep a tiger. The
danger to mankind and the injury, if any is suffered, comes
from the same source,--the ferocity of the animal. In
determining the responsibility of the keeper for an injury
inflicted by either animal, the only difference I can see
between the two cases is that, in the case of an injury
caused by a dog, the knowledge of the keeper that the dog was
ferocious must be alleged and proven, for all dogs are not
ferocious, while, in the case of a tiger, such knowledge will
be presumed from the nature of the animal." The
circumstances in that case were that "the dog was
chained under the steps leading to the defendant's house
in such a manner that he could not reach any one ascending
the steps; that the plaintiff, in entering the house upon a
lawful business, was ascending the steps, when one of the
steps, which was loose, slipped from its position, and the
plaintiff's leg went through the

opening, when it was seized and bitten by the dog under the
steps." This is a much stronger case for the defendant
than the case at bar, for here, in an alley frequented by the
employes of the defendant and by other persons, as testified
to by Downing,--an alley easy of access at one end,--this dog
was kept chained, but so chained that it was capable of
inflicting an injury, and did inflict an
injury, and its disposition to inflict such injury was well
known to the defendant. One of the best-considered cases is
the case of Johnson v. Patterson, 14 Conn. 1, wherein this
language is used: "A man may not, in this country, use
dangerous or unnecessary instruments for the protection of
his property against trespassers. Such instruments may be
used in England, but the principles on which their decisions
purport to rest are not sustainable or applicable here. The
true principles of the common law are recognized here, and a
man may use that force which is necessary to protect his
property, and no more; and he may keep and use such
instruments and no other, as the same necessary degree of
force will justify. A dog is an instrument for protection. A
ferocious one is a dangerous instrument, and the keeping of
him on the premises to protect them against trespassers is
unlawful, upon the same principle that setting spring guns or
concealed spears or placing poisonous food is unlawful."
This case is followed and approved by the supreme court of
Connecticut in Woolf v. Chalker, 31 Conn. 121. In the
particular case at bar it is admitted that the dog was
vicious,--accustomed to bite. We must, to use the language of
the court in Woolf v. Chalker, supra, say that "the
defendant had no right to keep such a dog for any purpose,
unless in an inclosure or building in the night season, and
cautiously, as a protection against criminal wrong-doers.
Certainly he could not keep him on his premises in the
day-time in such manner that a person, by accident, mistake,
or a voluntary or involuntary trespass, might be exposed to
his fury and be injured. In this case, if the plaintiff was a
trespasser at all, he was so unintentionally, involuntarily,
and by mistake." This, it occurs to us, is quite
sufficient to settle the liability of the defendant to the
plaintiff or appellee for the injuries sustained. It is
assigned for error that the court erred in its instructions
to the jury. Without giving in detail the instructions, we
think it is sufficient to say that we do not concur with appellant's counsel in this view. We see
nothing in the instructions not sustained by the authorities
cited, and, for the same reason, the court was warranted in
refusing the instructions asked by defendant. The last and
only error to which our attention is called is that the
damages are excessive. In view of the fact that the jury
found a verdict for $800, and that the trial court, which
heard all the testimony, determined that it should sustain a
verdict for $500, we do not feel at liberty to disturb the
judgment. Our conclusion is that the three allegations
necessary to be made and proved in a case of this
character--First, that the dog was vicious and in the habit
of biting mankind; second, that the defendant knew it; third,
that he bit and injured the plaintiff without any neglect or
fault on his part--were fully and satisfactorily established.
We think the verdict ought not to be disturbed.

The
judgment will be affirmed.