## No. 13,933.

SIMKINS *v.* DOWIS.
(67 P. [2d] 627)

Decided April 26, 1937.

Mr. T. E. MUNSON, Mr. FRANK P. LYNCH, for plaintiff in error.

Messrs. SAUTER & SANDHOUSE, for defendant in error.

*In Department.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THIS action was instituted by Donald Simkins, a minor, by his mother and next friend, Elizabeth Simkins, against R. T. Dowis for recovery of damages for injuries sustained by the plaintiff while playing with other children on defendant's merry-go-round in the city of Sterling, Colorado. The plaintiff alleges that the defendant negligently permitted the merry-go-round, at the time only partially installed, to remain unguarded and unprotected, although the defendant knew that the machinery was in a dangerous condition and liable to cause damage and injury to children who naturally would be attracted thereto; that the installation of a merry-go-round constituted the maintenance of an attractive nuisance; that numerous children had, in fact, gathered on the premises where the machinery was being installed and that plaintiff, then eight years of age, climbed upon the merry-go-round and when it was revolved by other children, had his foot

caught in the rotating cog wheels whereby he was seriously injured.

The plaintiff's evidence shows that the defendant, who had been in the amusement business, operating merry-go-rounds, ferris wheels and other amusement devices for a considerable period of time, on May 4, 1934, began the installation of a carnival in Sterling, consisting of a number of machines for the entertainment of children and others. During this day he began the erection of the merry-go-round involved, but its installation had not been completed, when shortly before six o'clock in the afternoon the defendant and his employees, who were engaged in the erection of the merry-go-round, ceased work and left it wholly unprotected, unfastened and unguarded. The upright brace constituting the bearing or perpendicular axle upon which the merry-go-round rotated had been installed and the upper part of the revolving structure from which later the horses, compartments and lower platforms of the merry-go-round would be suspended, was in place, as was the cog wheel mechanism which causes the wooden horses on the merry-go-round to rise and fall as the merry-go-round turns. Soon after the departure of the defendant and his men from the scene a considerable number of children congregated around the machinery. Several children, among whom was the plaintiff, climbed up to the superstructure of the machine and located themselves at various points thereon, the plaintiff being in proximity to the cog wheel mechanism mentioned. At this point two boys, about fourteen years of age, threw a rope over one of the projecting arms of the superstructure and began to revolve the merry-go-round thereby causing the cog wheels mentioned to turn. Plaintiff's foot, by some means, became entangled in these revolving cog wheels and his foot and ankle were so badly crushed and mangled that it became necessary to amputate his leg between the knee and ankle.

At the conclusion of the plaintiff's case, upon motion of the defendant, the court directed a verdict in favor of

the defendant on the grounds that there was no proof of any negligence on the part of the defendant; that there was an intervening cause of the accident, to wit, the boys with the rope; that there was no proof that the defendant by the mere construction of the merry-go-round was under any obligation to protect the plaintiff from injury therefrom, and that there was no proof that the defendant knew or had reasons to know that the merry-go-round he had left unprotected was in a dangerous condition and, therefore, it was to be assumed that the defendant had exercised reasonable care.

It is our conclusion that the court erred in granting the motion for a directed verdict.

■ The pleading and evidence of the plaintiff bring this case clearly within the principle of the attractive nuisance doctrine or "turntable" cases. The turntable doctrine has been considered and approved by this court in several cases, among which are: *Kopplekom v. Colorado Cement Pipe Co.*, 16 Colo. App. 274, 64 Pac. 1047; *Public Service Co. v. Petty*, 75 Colo. 454, 226 Pac. 297; *Denver City Tramway Co. v. Nicholas*, 35 Colo. 462, 84 Pac. 813. The basic principle which was first announced, so far as modern law is concerned, in the case of *Lynch v. Nurdin*, 1 Q. B. 29, an English case, has been adopted by the United States courts and by the courts of last resort in a majority of the states of the Union. The rule is clearly set out in *Kopplekom v. Colorado Cement Pipe Co., supra,* where the court, at page 278, said: "If an owner sees fit to keep on his premises something that is an attraction and allurement to the natural instincts of childhood, the law, it is well settled, imposes upon him the corresponding duty to take reasonable precautions to prevent the intrusion of children, or to protect from personal injury such as may be attracted thereby."

The leading case on the subject in the United States is probably that of *Railroad Company v. Stout*, 17 Wall. 657, 21 L. Ed. 745, decided by the Supreme Court of the United States, and which has been cited with approval

in most, if not all, of the Colorado cases mentioned and is specifically followed in the Kopplekom case, supra. In the opinion in the latter case a portion of the charge to the jury of the distinguished Judge Dillon (2 Dill. 294, 23 Fed. Cas. No. 13504, p. 183), when the case was tried in the Circuit Court, is quoted. We believe a clearer comprehension of the principle may be given by reference to additional parts of Judge Dillon's charge, which, including the portion quoted in the Kopplekom case, supra, pp. 184-185, reads as follows:

"Now the ground of complaint against the defendant, as set out in the petition, is that the turntable, as it was constructed, was of a dangerous nature and character, when unlocked or unguarded, and that being, as it is alleged, in a place much resorted to by the public, and where children were wont to go and play, it was the duty of the defendant to keep the same securely locked or fastened, so as to prevent it from being turned or played with by children, or to keep the same guarded, so as to prevent injuries such as befell the plaintiff.

"The basis of this action, therefore, is that the defendant owed the plaintiff a duty of this kind; that, in failing to discharge this duty, the defendant was guilty of negligence; * * *.

"The machine in question is part of the defendant's road, and was lawfully constructed where it was. If the railroad company did not know, and had no good reason to suppose, that children would resort to the turntable to play, or did not know, or had no good reason to suppose, that if they resorted there, they would be likely to get injured thereby, then you cannot find a verdict against them.

"But if the defendant did know, or had good reason to believe, under the circumstances of the case, the children of the place would resort to the turntable to play, and that if they did they would or might be injured, then, if they took no means to keep the children away, and no means to prevent accidents, they would be guilty of negligence,

and would be answerable for damages caused to children by such negligence.''

This instruction to the jury was approved by the United States Supreme Court on the appeal of the Stout case, supra, to that court. Under this rule the defendant's negligence, if it does exist, is in the leaving without proper care, a dangerous machine attractive to children in a place where it might reasonably be expected children would congregate and put it in motion to the injury of themselves or others.

In the case at bar the very fact that a large number of children admittedly gathered by the merry-go-round, even in its uncompleted state, is persuasive proof that the merry-go-round had inherent qualities that made it attractive to children. A perusal of the ''turntable'' cases proper would indicate that, to some extent at least, it has been judicially suggested that the attractiveness of a turntable to the childish mind is based upon the similarity of that piece of machinery to a merry-go-round. The Supreme Court of Iowa, in the case of *Edgington v. Railroad Company*, 116 Iowa 410, 90 N. W. 95, 57 L. R. A. 561, in connection with this, at page 414, said: ''It is useless to moralize upon the instinct for play which controls the action of a child, or argue for its control by parental authority and guidance. It exists, ingrained in the child's being, and we must deal with it as we find it. Nothing seems to appeal to it more strongly than some device in the form of a merry-go-round; and the temptation to ride it, if the opportunity offers, is practically irresistible, until approaching maturity brings some reasonable measure of adjustment and discretion.''

With reference to the extent of the proof required to show the dangerous character of the attractive instrumentality, this court in the Kopplekom case, supra, at page 277, said: ''The complaint alleges the danger in leaving the piping exposed as it was, and in fact it may be said, as was said in the turntable case, the fact of the fatal injuries being received therefrom by the son of the plaintiffs in this case, shows the danger.''

In the case at bar this dangerous element was likewise shown by the fact that the plaintiff had his leg badly injured by the mechanism of the unprotected machine.

The case at bar is clearly distinguishable from the cases of *Hayko v. Colorado & Utah Coal Co.,* 77 Colo. 143, 235 Pac. 373, and *Dunbar v. Olivieri,* 97 Colo. 381, 50 P. (2d) 64, in which it was held, respectively, that a shack and a fire in a rubbish burning device, on the owner's premises, were such common, ordinary and usual things as not to entice trespass by children and as a matter of law, therefore, were not attractive nuisances. In our opinion this cannot be said of a merry-go-round.

The judgment of the trial court in directing a verdict for the defendant was apparently to some extent based upon the theory that the plaintiff's injury resulted from the intervening action of the boys with the rope who actually caused the merry-go-round to revolve. Even with this being the fact, as is conceded, such intervening cause would not defeat the plaintiff's right of recovery. This rule is well stated in 45 C. J., p. 784, §187, as follows: "The act of a third person in setting in motion machinery attractive to children and left unguarded is not considered such an intervening independent cause as will relieve the owner of such machinery from liability for injury to a child, and a fortiori, the act of the child in the course of his play, after he reached the dangerous and attractive premises or machinery, cannot be regarded as an intervening efficient cause which will relieve the owner of liability."

Nor does the fact, as suggested by counsel for the defendant, that the boys who placed the machine in operation were of such an age that they should have anticipated the result of their action and thereby be guilty of negligence themselves, alter the situation. In the case of *Gulf, Colorado & S. F. Ry. Co. v. McWhirter,* 77 Tex. 356, 14 S. W. 26, in which proceeding the plaintiff, a child of five years of age, was injured by a turntable revolved by children over fourteen years of age, the court, at page

360, states: "Under the evidence and finding of the jury it must be conceded that the negligence of appellant contributed to the injury, and if it be conceded that the person who put the turntable in motion was sui juris this would not relieve the appellant from liability though another party might also be liable."

Likewise, in this connection it was said by the Supreme Court of Iowa in *Edgington v. Railroad Co., supra,* at page 445: "It is finally said that the negligence, if any, of the defendant, was not the primary cause of the injury complained of, and that no injury would have occurred had not a third person removed the fastening, and still another revolved the table. This contention is not supported by the authorities. In the very nature of things, a child cannot well be injured upon a turntable without the intervention of some other person to revolve the machine."

We believe, therefore, that the evidence of the plaintiff was prima facie sufficient to bring the case within the attractive nuisance doctrine and that the matter should have been submitted to the jury with proper instructions.

As one of the defendant's grounds for a directed verdict it was asserted that the complaint contained no allegation showing the exercise of due care on the part of the plaintiff, and that the proof was silent on this subject. The court ruled adversely to the defendant on this contention and the question is presented here on a cross-assignment of error. This proposition will likely arise in the new trial of the case, so we deem it advisable to mention our views on the subject. Whether the plaintiff lacked sufficient age and intelligence to be protected by the principle of the "turntable" cases in exposing himself to danger in climbing upon the merry-go-round, is a question for the jury. The general rule relative to the status of infants in negligence cases in Colorado is stated in the case of *Colorado Utilities Corporation v. Casady,* 89 Colo. 156, 165, as follows: "Minors not prima facie sui juris are required to exercise only such care to avoid

danger as might fairly and reasonably be expected from persons of their age. If there is a fair doubt as to a child's being of the age and capacity that in law would charge it with responsibility for the act contributing to its injury, the question should be submitted to the jury. *Richardson v. El Paso Consolidated Gold Mining Co.*, 51 Colo. 440, 118 Pac. 982; *Pueblo Electric Street Ry. Co. v. Sherman*, 25 Colo. 114, 53 Pac. 322; *Denver City Tramway Co. v. Nicholas*, 35 Colo. 462, 84 Pac. 813; *Kopplekom v. Colorado Cement Pipe Co.*, 16 Colo. App. 274, 64 Pac. 1047; *Walters v. Denver Consolidated Electric Light Co.*, 12 Colo. App. 145, 54 Pac. 960; *Union Pacific R. Co. v. McDonald*, 152 U. S. 262, 14 Sup. Ct. 619.''

In the Montana case of *Gates v. Northern Pacific Ry. Co.*, 37 Mont. 103, 94 Pac. 751, relied upon by the defendant, it was held that it was necessary to allege and prove that an eleven year old boy was so immature as to bring him within the rule of the Stout case, supra. The Montana court in arriving at the foregoing conclusion expressly stated that this rule would not apply where ''a child is so very young that there can be no question of his lack of capacity.'' Even if the Montana case correctly states the general rule, which we very much doubt, the case at bar in our opinion would come within the exception. We feel, as did the trial court, in alleging that the plaintiff was but eight years of age at the time he was injured, the complaint was sufficient to entitle him to the protection the law affords persons not sui juris without negativing lack of due care on his part. We do not believe that a court should say as a matter of law that a child of eight years has attained the maturity at which there can be no question of his lack of capacity.

The judgment is reversed.

Mr. Chief Justice Burke and Mr. Justice Holland concur.