# No. 17,307.

BARGER ET AL. *v.* JIMERSON ET AL.
(276 P. [2d] 744)

Decided November 15, 1954.   Rehearing denied December 6, 1954.

Mr. John F. Mueller, Mr. Frank L. Hays, Jr., for plaintiffs in error.

Mr. Harry A. Feder, for defendants in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the Court.

Plaintiffs in error, defendants in the trial court, seek reversal of a judgment in the sum of $4773.00 against them for and on account of injuries alleged to have been inflicted on defendant in error Joy Jimerson, for and on account of an attack made upon her by a vicious dog of which plaintiffs in error were the owners and which, it is alleged, they permitted to run at large.

Prior to the 27th day of March, 1952, Joy Jimerson, to whom we herein refer as plaintiff, resided at 2815 Oneida street where she had lived for about four years. For a period of less than a year the Bargers, defendants, lived next door at 2825 Oneida street, leaving that address about August, 1951. The backyards of the two premises were fenced and particularly the backyard of defendants where they kept a large dog, to which we herein refer as a German Shepherd, and which never was allowed to be out of the enclosure except upon a leash. At the trial before a jury many witnesses testified to the effect that the dog appeared to have a ferocious nature and when anyone appeared, would commence barking and run to and lunge on the fence. If anyone desired to enter the premises from the rear, it was necessary to call the owner who would come and hold the dog, as is illustrated by the calls of the meter reader who testified to that effect. Plaintiff testified that whenever she went into her backyard, which was several times a day, the dog always barked and would come tearing toward her and jump onto the fence, even

though she tried to calm it by talking to or appearing to be kind to it. A number of other witnesses testified that their children and other children played in the back-yard with the dog; that it was friendly to the children; that they did not consider the dog to be vicious or dangerous; and defendants testified to that same general effect, emphasizing that the dog seemed to have a protective disposition as to property. Defendants moved to a new address, 2220 Rosemary street, where they kept the dog under similar conditions.

At about 7:00 o'clock on the morning of March 27, 1952 plaintiff, Joy Jimerson, went out in front of her place to get the morning paper. As she went down the driveway on her property, she heard a ferocious growling and saw a dog coming at her; it attacked her by grabbing her left ankle; and she fell. The dog continued chewing on her leg and she finally got into the house and called the police who responded and dressed her wounds by washing them with soap and water. The police officer then inquired in the neighborhood concerning the dog and it was learned that the dog was seen at the old premises the day before; and the police officer testified that, upon learning of the new address of the Bargers, he went there to ascertain if it was their dog and was told by Mrs. Barger that the dog had escaped several days before and that they were about ready to advertise for it. Mrs. Barger went to the old premises next door to plaintiffs', got the dog and took it home.

There is little reason to detail all of the testimony concerning the dog and its behavior, pro and con, and we content ourselves by relating the general over-all picture as hereinbefore stated. Beside the testimony of plaintiff as to her injuries, her doctor testified that she had suffered a muscular disability to her left leg that was permanent in its nature; that phlebitis set in as a result of the dog bites; that she had pain in her left leg as late as October, 1952; that she had suffered damage to the muscles, nerves and bloodvessels in the left leg;

and that scars on her left leg as a result of the dog bites would never disappear. A doctor, testifying on behalf of defendants, stated under cross-examination that there was possible permanent damage to the internal saphenous vein of plaintiff's left leg as a result of the dog bites and that she afterwards could have the unpleasant pulling sensation which she described at the time of the trial.

Allegations of the complaint were of the customary nature setting forth the incidents herein related and charging that defendants, knowing that the dog had vicious propensities, allowed the dog to run at large and permitted it to commit the injuries received by plaintiff. In defendants' answer they admitted ownership of the dog and as a defense alleged that the injuries, if any, claimed by plaintiff were proximately caused by her failure to use ordinary and reasonable care for her own safety. The case was submitted to a jury upon what we believe to be proper instructions, although some thereof were objected to by defendants. We see no reason to discuss the matter of the instructions.

■ At the beginning of the trial, plaintiffs requested, and were permitted to strike from their second cause of action the following language: "and allowed said dog to run at large and loose." At the conclusion of all the evidence and upon motion of defendants that plaintiffs be required to elect upon which cause of action the case should be submitted to the jury, plaintiffs elected to stand upon the second cause of action and requested the court for leave to reinstate the stricken portions of the complaint, which leave was granted by the court. We see little reason to discuss the propriety of this procedure since it is not ultimately important for a determination of the case. It is quite evident that defendants did not at any time carelessly or intentionally allow the dog to run at large. Their liability was in keeping such a dog and they did so at their peril.

■ ■ Before liability could attach, defendants had to

know or have notice of what is termed in such cases as "vicious propensities" of their dog. This description is defined in "Words and Phrases," vol. 44 Permanent Edition, page 263, as follows: "A 'vicious propensity' of a dog is not confined to a disposition to attack every person but includes as well a natural fierceness or disposition to mischief as might occasionally lead him to attack human beings without provocation."

There is no evidence in this case that the dog in question had ever bitten anyone before, but its ferocious and violent nature as daily exhibited to many people, especially the neighbors, was such as to put prudent people on guard to prevent a possibility of attack on human beings. A study of the record herein leads us to say that the proof offered as to the nature and disposition of the dog as appearing to be savage and ferocious was equivalent to express notice. Moreover, the fact that defendants kept the dog confined is persuasive in concluding that they considered it unsafe for the dog to be at large.

Defendants placed much reliance upon the established facts that their dog escaped from the confines of their new home during a storm and was gone for about seven days. This defense is of no avail in view of the fact that they were the owners of the dog which proved to be vicious and, knowing the dangerous propensities, they were bound to keep the animal secured at their peril because they had assumed the risk of keeping him secured. *Melsheimer v. Sullivan,* 1 Colo. App. 22, 27 Pac. 17, approved in *Carlberg v. Willmott,* 87 Colo. 374, 287 Pac. 863.

The liability of defendants being now and herein fixed, we approach the question of the claimed excessive verdict. Plaintiff testified, and the records of her employer show, that she suffered a loss of earning capacity to the extent that she could do only about 25% of the work she normally performed, and this Court has held in cases too numerous to mention that such is a proper element of damage to be considered by a jury. We do

not believe that the damages herein awarded by the jury are disproportionate to the injuries received by plaintiff; and, therefore, the verdict will not be disturbed, since there was no evidence produced that could have created any prejudice or passion in the minds of the jury against defendants or either of them. Our examination of the record convinces us that the case was submitted to the jury upon proper and fair instructions which we do not deem it necessary to discuss. The jury found in favor of plaintiff, W. E. Jimerson; but also found that he had not been damaged.

In accordance with the views herein expressed, the judgment should be, and hereby is, affirmed.