No. 19,045.

E. P. Swerdfeger *v*. John L. Krueger, Minor, etc.

(358 P. [2d] 479)

Decided December 30, 1960.

Messrs. Wood, Ris & Hames, for plaintiff in error.

Mr. Wade P. Connell, for defendant in error.

*En Banc.*

Opinion by Mr. Justice Day.

A JUDGMENT in damages entered by the trial court as a result of a jury verdict in favor of John Krueger, a minor, is sought to be reversed by this writ of error. The Krueger boy had sustained injury as a result of being bitten by a Malemute Husky dog belonging to the plaintiff in error Swerdfeger, who was the defendant below.

The three main points relied upon by Swerdfeger in his summary of argument are:

A. That the proof was insufficient to establish that Swerdfeger knew that the dog was vicious.

B. That the court erred in not requiring the plaintiff to elect as to which cause of action he was relying on, i.e., 1. the liability arising from owning or harboring a vicious dog with knowledge of its vicious propensities (scienter), or 2. negligence in keeping a vicious dog.

C. That under the factual situation disclosed the court should have found for the defendant as a matter of law and should have directed the jury to return a verdict in his favor.

Because it is our holding that the defendant was entitled to a directed verdict under point (C), only brief comment is necessary as to the other two points. The knowledge of Swerdfeger is sufficiently established, and it makes no difference whether plaintiff sued under the doctrine of scienter or on the theory of defendant's negligence because the defense of contributory negligence is available to defendant under either action. 66 A.L.R. (2d) 924 (c); *Melsheimer v. Sullivan,* 1 Colo. App. 22, 27 Pac. 17.

The facts are not materially in dispute. It is virtually conceded that Swerdfeger had knowledge of previous instances wherein the dog had either bitten other children or had so roughly treated at least one child as to indicate that it had either bitten or scratched the child. The dog was four years old, was not kept as a watch

dog, and had not been trained as such. It was a pet of the Swerdfeger children and had been so reared. The Swerdfeger backyard was not fenced but had a row of lilac bushes along the property line bordering on an alley down which the Krueger boy and two other boys were proceeding on their way home from school. The dog was securely chained in the Swerdfeger backyard to a dog house, and the length of chain was such that at its further-most extension the dog would be well within the Swerdfeger yard, restrained from its outer borders and away from a driveway and back entrance to the house, the normal ingress or egress of persons lawfully entering the premises from the rear. John Krueger was an eleven-year-old boy of more than average intelligence. He and his companions saw the dog lying on top of the dog house, and young Krueger announced that he was "going in to see this dog." But before Krueger entered the yard both of his companions warned him several times that the dog was "bad," "vicious," and that "he might bite" and that he (Krueger) "might get hurt." One of the companions related to Krueger that he himself had been bitten by the dog and warned him not to go into the yard. Krueger replied "he knew dogs and was not afraid of them." Krueger entered the yard between some of the lilac bushes and approached the dog. The dog jumped on Krueger, bit him on the face and back and tore his jeans.

■ Although plaintiff was not required to make an election as to the theory upon which he attempted to place liability on Swerdfeger, he did not press strongly in the trial court, and does not seriously urge here, that a case of negligence had been established. Swerdfeger did everything he was required to do in law. He had securely restrained the dog where it could not reach anyone who used the common areaways. And since Krueger was a trespasser there was no duty on the part of the landowner which transcends what was done here.

■ The general rule of law is in the Restatement of the Law — Torts, §339 (e) as follows:

"A possessor of land is, under the statement in Comment a, under a duty to keep so much of his land as he knows to be subject to the trespasses of young children, free from artificial conditions which involve an unreasonable risk of death or serious bodily harm to them. This does not require him to keep his land free from conditions which even young children are likely to observe and the full extent of the risk involved in which they are likely to realize. The purpose of the duty is to protect children from dangers which they are unlikely to appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known danger. Therefore, even though the condition is one which the possessor should realize to be such that young children are unlikely to realize the full extent of the danger of meddling with it or encountering it, the possessor is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved therein but none the less chooses to encounter it out of recklessness or bravado."

It appears, therefore, that counsel for Krueger seeks to establish absolute liability on the owner of a dog known to be vicious, however restrained or controlled, and regardless of the status of plaintiff as trespasser and regardless of the acts, knowledge or conduct of plaintiff. In urging such position he relies on *Melsheimer v. Sullivan*, supra, and *Barger v. Jimerson*, 130 Colo. 459, 276 P. (2d) 744. Neither case is authority for the proposition urged under the facts here. In the Melsheimer case the dog was kept for the express purpose of attacking trespassers and was so placed by the owner as to be able to reach anyone coming upon the premises. The dog was trained as a watch dog and to attack strangers. The plaintiff in the Melsheimer case was a private policeman, performing his duties and making his rounds, and in pursuit of a suspicious character presumably hav-

ing no lawful business in the area. In 66 A.L.R. (2d) at page 294, note (c), the Melsheimer case is cited as placing Colorado along with other states as following the majority rule allowing the defense of contributory negligence in actions based on scienter. It is to be noted that in the Melsheimer case the court specifically found the following three elements as establishing liability:

1. "That the dog was vicious and in the habit of biting mankind."

2. "That the defendant knew it."

3. That he bit and injured the plaintiff without any *neglect* or fault on his [plaintiff's] part.

Also there the question of the contributory negligence of the plaintiff was squarely before the court, and the court found no neglect or fault on the part of the plaintiff.

In the Barger case liability was established because the dog was able to break loose from its restraining chains and to roam the neighborhood, where he attacked the plaintiff. In that case the court held that the owners "were bound to keep the animal *secured* at their peril because they had assumed the risk of keeping him *secured*." The difference in the case at bar is readily apparent because Swerdfeger did keep the dog secured and out of reach of every one except those who deliberately approached the dog. Here, though the action of the boy in going to the animal was not of itself the basis of contributory negligence as a matter of law, additional undisputed facts are present which bar his recovery. He deliberately put himself in harm's way with full knowledge and understanding of what his companions had told him about the dog. Their urgings that he stay out and their warnings that he would get hurt, were brushed aside with the statement that he was not afraid. This brings him squarely within the language found in Restatement of the Law — Torts, quoted above: " * * * the possessor is not subject to liability to a child who in fact discovers the condition and appreciates the full risk

involved therein but none the less chooses to encounter it out of recklessness or bravado."

The judgment is reversed and the cause remanded with instructions to the trial court to vacate the judgment and dismiss the action.

MR. JUSTICE FRANTZ and MR. JUSTICE DOYLE dissent.

MR. JUSTICE FRANTZ dissenting:

This case was submitted to the jury on questions of fact and the court gave instructions on contributory negligence and assumption of risk. A verdict favorable to the plaintiff was rendered by the jury, after which the court entered judgment pursuant to the verdict. It is my opinion that this verdict and judgment should not be disturbed.

We are considering the acts of a technical trespasser, a boy who had attained the age of 11 years. "It has been considered that a trespass which is purely technical will not preclude recovery for an injury suffered by the trespasser through the negligence of the owner or person in charge of the premises." 65 C.J.S. §24 (1), page 446.

The unfortunate happening in this case took place in an urbanized community. Many of the activities of children of tender years and even of adults in such a community, in going upon the property of another, can be described as nothing more than technical trespasses. To view them otherwise would tend to render urban life frictional. Thus, the boy who would retrieve his baseball from the front lawn of his neighbor, or who would run across the lawn of an owner in an effort to evade capture while playing with other boys, or who would be attracted to smell some beautiful flowers in a yard — examples could be multiplied — would be a trespasser only in a very technical sense. His motives would not be bad and his accountability should be viewed in the light of what prompted him to go upon the premises.

Such technical trespasser is far removed from the person who goes on the premises of another to burgle a house or to destroy property or to commit some other depredation or misdeed.

This is one facet of this case which should temper the general rule regarding the rights of a trespasser and the duties of the owner to him.

Cases involving the *condition* of property and its likelihood to injure a trespasser should be distinguished from the present case in which there is an active force that might bring harm to a technical trespasser. *Starkey v. Dameron,* 92 Colo. 420, 21 P. (2d) 1112, 22 P. (2d) 640. A dog kept on the premises and known to hurt persons is more nearly like the Spring-gun case, and the rule there applied should have application here.

This is another facet of the instant case which should take it out of the general rule relating to trespassers and the duties owing them by owners.

A third facet of this case involves the rule espoused by this court in the case of *Krause v. Watson Bros.,* 119 Colo. 73, 200 P. (2d) 387, and which we should properly reaffirm in this case, to-wit:

" 'The known characteristics of children should, however, be taken into consideration in determining whether or not sufficient care for the safety of a child has been exercised in a particular case. Accordingly, the fact that children cannot and do not ordinarily exercise the same degree of prudence and care for their own safety as adults imposes upon those by whose acts or omissions a child may be injured the obligation of exercising more vigilance and caution than might be sufficient with respect to an adult, and conduct which might reach the standard of ordinary care with respect to an adult might, in the case of a child, amount to negligence, or even gross negligence.' 45 C.J., 702-703."

Lastly, we should, as did the trial court, apply the rule that whether a child at 11 years of age is guilty of contributory negligence or assumes the risk is a question of

fact for the jury to resolve. The age and intelligence of such a boy should be evaluated by the jury, and it should not be intimated or held that, as a matter of law, such a boy was guilty of contributory negligence or assumed the risk in going upon the premises. An early case voiced the view that "the law does not exact the same degree of care and diligence from a child of tender years that it does from an adult person of presumed better judgment and discretion." *Pierce v. Conners,* 20 Colo. 178, 37 Pac. 721, 46 Am.S.R. 279.

In a case involving a 13-year-old lad, this court said: "If there is a fair doubt as to the child being of the age and capacity that in law it should be held responsible for the act contributing to its injury, the question should be submitted to the jury to say, by their verdict, whether this is so or not." *Street Railway Co. v. Sherman,* 25 Colo. 114, 53 Pac. 322, 71 Am.S.R. 116.

Firmly entrenched in the law of this state is the rule that "the law discriminates between children and adults, the feeble and strong, and only requires of each that degree of care to be expected in view of his age and condition," and that the question of whether such care is exercised "is usually one for the jury to determine." *Denver City Tramway Co. v. Nicholas,* 35 Colo. 462, 84 Pac. 813. Again, a boy 13 years of age was involved.

These rules have been followed in subsequent cases. Thus, they were applied to a girl 14 years of age in the case of *Daniels v. Johnston,* 39 Colo. 177, 89 Pac. 811; to a boy 9 years of age in the case of *Richardson v. El Paso Co.,* 51 Colo. 440, 118 Pac. 982; to a boy 9 years of age in the case of *Colorado Utilities Corp. v. Casady,* 89 Colo. 156, 300 Pac. 601; to an 8-year-old girl in the case of *Simkins v. Dowis,* 100 Colo. 355, 67 P. (2d) 627; to a girl 12 years of age in *Lakeside Co. v. Wein,* 111 Colo. 322, 141 P. (2d) 171; to a girl 6 years of age in *Krause v. Watson Bros.,* supra; to a boy 12 years of age in *Walters v. Electric Light Co.,* 12 Colo. App. 145, 54 Pac. 960; and to a child of tender years in the case of *Kopplekom v.*

188

*The Colorado Cement Pipe Co.*, 16 Colo. App. 274, 64 Pac. 1047, 54 L.R.A. 284.

In view of the well-settled law in this state having application to this case, I would affirm the judgment.

MR. JUSTICE DOYLE joins in this dissent.