Margaret DuBOIS and Ronald W. DuBois, Plaintiffs-Appellants,

v.

Harry L. MYERS, III, a/k/a Jack Myers, and Kenna Croquart, Defendants-Appellees.

No. 82CA0286.

Colorado Court of Appeals, Div. I.

March 15, 1984.

As Modified on Denial of Rehearing April 19, 1984.

Chrisman, Bynum & Johnson, P.C., Michael H. Bynum, Robert L. Matthews, Boulder, for plaintiffs-appellants.

Thorburn & Sakol, Barre M. Sakol, Boulder, for defendant-appellee Harry L. Myers, III.

Fischer, Brown, Huddleson & Gunn, Steven B. Ray, Fort Collins, for defendant-appellee Kenna Croquart.

BABCOCK, Judge.

Plaintiffs, Margaret and Ronald W. DuBois, appeal the summary judgment entered in this action for damages for injuries sustained by Margaret when kicked by a horse owned by Harry L. Myers, III, and kept on property owned by Kenna Croquart (defendants). Plaintiffs contend that the summary judgment in favor of defendants was erroneously granted because genuine issues of material fact existed as to whether the horse possessed dangerous or vicious propensities and as to whether de-

fendants had knowledge or notice of such tendencies. Plaintiffs also contend that the trial court erred in refusing to consider an affidavit disclosing newly discovered evidence which was filed together with their motion for rehearing. We affirm.

During the spring of 1978, Myers arranged to keep his unbroken horse, Indy, on Croquart's property which was in the same neighborhood as that of plaintiffs' property. The kicking incident occurred on June 30, 1978, approximately one month after Indy had been moved onto the Croquart property, during a training session at which Myers, two of his friends, and Margaret were present. In May 1979, plaintiffs filed a complaint which in pertinent part alleged that Margaret was assisting Myers in training Indy on the date of her injuries, that both defendants knew or should have known of Indy's vicious, dangerous, or unmanageable tendencies, that both defendants failed adequately to disclose these tendencies to her, and that their inadequate disclosure was the proximate cause of her injuries.

At the pretrial conference on February 14, 1980, both defendants filed motions for summary judgment. At that time, the motions were scheduled for oral argument on April 2, 1980. Both motions were supported by affidavits of the defendants and Indy's veterinarian, farrier, and prior and subsequent owners.

Following oral argument and based upon these affidavits, as well as depositions of the parties and that of a witness to the incident, the trial court found that the material facts presented concerning the existence of the propensities of the horse and defendants' knowledge thereof were undisputed. From those facts, the trial court concluded that reasonable persons could not find that Indy possessed dangerous propensities or that defendants had knowledge thereof. Accordingly, it entered summary judgment for defendants.

On May 22, 1980, plaintiffs filed a motion for rehearing. The motion was amended on August 11, 1980, to request that the trial court consider newly discovered evidence pursuant to C.R.C.P. 59(a) and (b). The trial court denied the motion.

## I. Summary Judgment

Plaintiffs argue that a factual dispute exists as to whether Indy possessed dangerous propensities and whether defendants had knowledge of such dangerous propensities. We disagree.

 In order to establish that a person who owns or keeps a domestic animal is liable for injuries inflicted by that animal, a plaintiff must prove: (1) that the animal has vicious or dangerous tendencies; (2) that the owner or keeper had knowledge or notice thereof; and (3) that the owner or keeper did not exercise reasonable care to prevent injuries reasonably anticipated to result from such tendencies. *Swerdfeger v. Krueger*, 145 Colo. 180, 358 P.2d 479 (1960); *Colo.J.I.* 13:1 (2d ed. 1980). A dangerous or vicious tendency of a domestic animal includes not only a disposition to attack every person, but also a natural mischievous disposition that may on occasion lead it to attack without provocation. *See Barger v. Jimerson*, 130 Colo. 459, 276 P.2d 744 (1954).

 Here, the only evidence which favors plaintiffs' position as to the existence of a dangerous or vicious propensity and defendants' knowledge or notice thereof is the fact that Myers had been thrown from Indy on a previous occasion. Negligence cannot be presumed on the basis of this fact alone, especially since Margaret knew that Indy was unbroken. *See Wolfe v. Wilkins*, 491 P.2d 595 (Colo.App.1971) (not selected for official publication). Hence, because no evidence was presented which created a genuine issue of material fact, the trial court properly granted defendants' motions for summary judgment. *See Wolfe v. Wilkins, supra.*

 The affidavits and depositions submitted by the parties established the following. At the time Myers bought Indy, Indy had never exhibited any dangerous or vicious propensities. However, on occasion Indy behaved stubbornly during training sessions. And, Indy bucked Myers off the

first time he rode her outside of the training arena where she was boarded before the move to the Croquart property.

Before moving Indy to the Croquart property, Myers told Croquart that Indy was not broken. Because of this and her inexperience with horses, Croquart did not attempt directly to approach Indy. However, she and her minor son entered the corral daily to feed and water Indy without fear for their personal safety.

The farrier indicated that during his second visit to the Croquart property for the purpose of preparing Indy's hooves for shoeing, Indy had been "skidderish," but had not exhibited any dangerous propensities. In addition, the veterinarian, who had treated Indy on several occasions for the purposes of worming and inoculations, had not observed any behavior indicative of dangerous propensities.

Finally, it was undisputed that Margaret, who had had approximately 20 years' experience working with and training horses prior to the incident, had previously been informed by Croquart that Indy was unbroken. Moreover, Margaret had the opportunity to observe Indy's stubborn behavior while Myers was working Indy for approximately 20 minutes immediately preceding the incident. Margaret proceeded to work further with Indy.

In granting defendants' motions for summary judgment, the trial court concluded that reasonable persons could not find from these facts that Indy possessed dangerous or vicious propensities which were known or should have been known by the defendants. We agree with the trial court's conclusion.

## II. Motion for Rehearing

Plaintiffs contend that the trial court erred in refusing to consider the newly discovered evidence in ruling on their motion for rehearing. They argue that the standards set forth in C.R.C.P. 59(a)(4) for the granting of a new trial on the basis of newly discovered evidence should not be applied to newly discovered evidence proffered in connection with a motion for rehearing following an adverse ruling on a motion for summary judgment. Alternatively, they claim that they have met the standards set forth in C.R.C.P. 59(a)(4). We disagree.

### A.

C.R.C.P. 59(a)(4) provides that a new trial may be granted on the basis of newly discovered evidence if such evidence is "material for the party making the application" and such that the party "could not, with reasonable diligence, have discovered and produced [the evidence] at trial."

Plaintiffs argue that these standards are unduly rigorous when applied to the review of an order for summary judgment since the introduction of new evidence would not involve the voiding of a trial on the merits and the granting of a second trial. They propose that newly discovered evidence should be considered after an order for summary judgment if: (1) the proponent made a good faith effort to locate the evidence prior to the motion for summary judgment; (2) he did not engage in dilatory tactics; and (3) the opponent will not be exposed to substantial prejudice.

■ The paramount purpose of summary judgment is to expedite litigation by avoiding needless trials where no genuine issue exists as to any material fact and the movant is entitled to judgment as a matter of law. *In re Application for Water Rights of Bunger v. Uncompahgre Valley Water Users Ass'n*, 192 Colo. 159, 557 P.2d 389 (1976); *Blain v. Yockey*, 117 Colo. 29, 184 P.2d 1015 (1947); *see* C.R.C.P. 56(c).

Plaintiffs submit that the spirit in which the rule is to be applied is embodied in C.R.C.P. 56(f) which provides:

"Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or deposition to be taken or discovery to be had or may make such other order as is just."

As indicated in *Miller v. First National Bank,* 156 Colo. 358, 399 P.2d 99 (1965), the purpose of this subsection is to safeguard against a *precipitous and premature grant of summary judgment. See also* 10A *C. Wright, A. Miller & Kane, Federal Practice & Procedure* § 2740 (2d ed. 1983).

■ C.R.C.P. 56(f) affords a party an opportunity to obtain an extension of time in which to seek additional evidence by utilizing the discovery procedures provided by the Rules *before* the trial court's ruling on a motion for summary judgment. We therefore conclude that the standards set forth in 59(a)(4) are not unduly rigorous when applied to evidence discovered *after* an order for summary judgment has been entered. *See Meyer v. Schwartz,* 638 P.2d 821 (Colo.App.1981). Application of these standards serves not only to promote the overriding purpose of summary judgment, but also to assure finality of judgment.

### B.

Plaintiffs contend that they met the reasonable diligence and materiality standards of C.R.C.P. 59(a)(4). Again, we disagree.

In their reply to defendants' motions for summary judgment, filed March 14, 1980, plaintiffs claimed that summary judgment would be improper because they had not yet conducted formal discovery with Indy's prior owner and veterinarian, the individuals present when the incident occurred, and "those with prior contacts with Indy and the defendants." And, at that hearing, plaintiffs agreed to proceed despite their claim that they had not yet completed discovery.

■ Sufficient time elapsed between the filing of defendants' motions for summary judgment and the hearing thereon to enable plaintiffs to complete formal discovery with respect to the veterinarian, the prior owner, and the individuals present at the incident. *See People ex rel. Garrison v. Lamm,* 622 P.2d 87 (Colo.App.1980). More than a year had elapsed since the incident occurred during which the plaintiffs had ample opportunity to locate "those with prior contacts with Indy and the defend-

ants." Moreover, plaintiffs failed to request a continuance and agreed to proceed with the hearing. *See Thi-Hawaii, Inc. v. First Commerce Financial Corp.,* 627 F.2d 991 (9th Cir.1980). *Cf. Miller v. First National Bank, supra.*

The newly discovered evidence proffered by plaintiffs together with their motion for rehearing was an affidavit of a neighbor who lived across the street from plaintiffs and two houses away from Croquart and who thus had the opportunity to observe the horse frequently. The plaintiffs and defendants filed affidavits and counter-affidavits upon the issue of reasonable diligence. From these affidavits the trial court concluded that the existence and nature of the neighbor's testimony was discoverable by the exercise of reasonable diligence prior to the hearing on defendants' motions for summary judgment.

■ The neighbor's affidavit and deposition opined, upon the basis of his observations, that Indy was "dangerous." The trial court, however, concluded that the neighbor's opinion was based on conduct which the neighbor himself considered common to *any* unbroken horse. Therefore, the trial court ruled that the evidence was immaterial and would not affect its rulings on defendants' motions for summary judgment.

■ The trial court's findings with respect to reasonable diligence and materiality are supported by the record, *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979), and the trial court did not abuse its discretion in deciding not to reopen the proceedings. *Meyer v. Schwartz, supra.* Therefore, its ruling will not be disturbed on review.

Judgment affirmed.

PIERCE and TURSI, JJ., concur.