**Ann K. KAPLAN and Robert Z. Kaplan, Plaintiffs,**

v.

**C LAZY U RANCH, et al., Defendants.**

**Civ. A. No. 84–K–1196.**

United States District Court, D. Colorado.

July 16, 1985.

Scott E. Spencer, McGuire, Cornwell & Blakey, Denver, Colo., for plaintiffs.

Alan E. Richman, Breit, Best, Richman & Bosch, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This diversity action is based on personal injuries sustained by plaintiff when she fell from a horse owned and allegedly saddled in a negligent manner by defendants, who own and operate the C Lazy U Ranch.

Defendants have moved for partial summary judgment as to plaintiffs' claims based upon res ipsa loquitur, strict liability for a dangerous animal, strict products liability and strict liability for failure to warn and/or instruct as to a dangerous product. Plaintiffs have responded with a brief opposing defendants' motion for partial summary judgment.

Summary judgment is a drastic remedy and the Tenth Circuit has cautioned that any relief pursuant to Rule 56, F.R.Civ.P., should be applied with care. *Jones v. Nelson*, 484 F.2d 1165, 1168 (10th Cir.1973). Rule 56 states that summary judgment shall be rendered when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Pleadings and factual inferences tending to show issues of material fact should be viewed in the light most favorable to the party opposing summary judgment. *Norton v. Liddel*, 620 F.2d 1375, 1381 (10th Cir.1980). Unless the moving party can demonstrate its entitlement beyond a reasonable doubt, summary judgment must be denied. *Id.; see also Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1383 (10th Cir.1980).

## I. *Res Ipsa Loquitur*

Plaintiffs contend that defendants are liable under the theory of *res ipsa loquitur* for injuries and damages sustained by plaintiffs. Defendants have moved for summary judgment arguing that *res ipsa loquitur* is a rule of evidence and does not create a substantive claim for relief.

■ Colorado courts have long held that *res ipsa loquitur* is not an independent substantive cause of action, but rather a rule of evidence affecting the burden of proceeding which is peculiar to the law of negligence. *Saint Luke's Hospital v. Schmaltz*, 188 Colo. 353, 534 P.2d 781

(1975); *Adams v. Leidholdt*, 38 Colo.App. 463, 563 P.2d 15 (1976), *aff'd*, 195 Colo. 450, 579 P.2d 618 (1978). A determination of whether the doctrine is applicable requires an examination of the factual context out of which the negligence claim arises. If plaintiffs meet the requisite conditions for the application of the *res ipsa loquitur* doctrine,[1] they will not be foreclosed from relying upon it in their claim for negligence. Since the doctrine is not a substantive cause of action and since plaintiffs are not barred from using such doctrine in their negligence claim, defendants are entitled to summary judgment on plaintiffs' *res ipsa loquitur* claim.

## II. *Strict Liability for Dangerous Animals*

■ Plaintiffs claim that defendants are liable under the theory of strict liability for dangerous animals. The complaint alleges that the horse "posed an unreasonable risk of injury to persons riding her because of her unusual conformation and/or her habit of expanding her chest when saddled, resulting in a propensity for Defendants' saddles to slip or tip to the side." Complaint, p. 6. Defendants have moved for summary judgment claiming that horses are not wild or naturally dangerous animals to which strict liability is applicable, and that any finding of liability must be based upon proof of negligence.

Colorado courts have applied strict liability to owners of wild animals which by their nature are vicious and unpredictable, and have done so without proof of the owners' knowledge of such propensities. *Collins v. Otto*, 149 Colo. 489, 369 P.2d 564 (1962). Strict liability also has been applied to owners of a domestic animal proven to be vicious where the owners were aware of their animal's dangerous propensities.

---

**1.** As stated in *Hilzer v. MacDonald*, 169 Colo. 230, 454 P.2d 928, 931 (1969), before the doctrine of *res ipsa loquitur* can be applied

the event must be one which would ordinarily not occur in the absence of someone's negligence. It must be caused by an agency or instrumentality within the exclusive control

of the defendant. Further, it must not have been due to any voluntary action or contribution on the part of plaintiff. And the evidence as to the true explanation of the event must be more readily accessible to the defendant than to the plaintiff.

*Barger v. Jimerson*, 130 Colo. 459, 276 P.2d 744 (Colo.1954). Horses, however, "are regarded as domestic animals virtually everywhere, and as to these, therefore, strict liability requires a showing that the defendant knew, or had reason to know, of an abnormal propensity." W. Prosser and W. Keeton, *The Law of Torts* § 76 (5th ed. 1984); *see also* Restatement (Second) of Torts § 509 (1977).[2]

Plaintiff's claim that the horse had a "dangerous propensity" is untenable. A horse which is known to kick or bite persons without provocation may have a dangerous propensity. A tendency, however, to expand its chest while being saddled, while it might be classified as fractious, is not a "dangerous propensity" within the scope of this doctrine of liability. Further, that habit alone could never be the proximate cause of plaintiff's injury. Defendant's motion for summary judgment on this claim is granted.

### III. *Strict Product Liability and Strict Liability for Failure to Warn and/or Instruct*

Plaintiffs allege under the theory of strict products liability that the lease or bailment of a horse and saddle constitutes the furnishing of goods for consideration and, further, that the goods furnished were defective and unreasonably dangerous. Plaintiffs also allege defendants are strictly liable for failure to warn and/or instruct as to a product which is unreasonably dangerous. In their motion for summary judgment, defendants claim that the doctrine of strict products liability does not apply to the lease or bailment of a horse and saddle because neither a "sale" nor a "product" is involved. Defendants also move for summary judgment on plaintiffs' strict liability claim for failure to warn and/or instruct.

Colorado has adopted the theory of strict products liability as defined in the Restatement (Second) of Torts § 402A (1965).

*McClanahan v. American Gilsonite Co.*, 494 F.Supp. 1334 (D.Colo.1980); *Union Supply Company v. Pust*, 196 Colo. 162, 583 P.2d 276 (Colo.1978); *Hiigel v. General Motors Corp.*, 190 Colo. 57, 544 P.2d 983 (Colo.1975). Section 402A provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Colorado's adoption of the Restatement position, however, has been further limited by the Colorado legislature. C.R.S. § 13–21–402(1) provides:

No product liability action based on the doctrine of strict liability in tort shall be commenced or maintained against any seller of a product which is alleged to contain or possess a defective condition unreasonably dangerous to the buyer, user, or consumer unless said seller is also the manufacturer of said product or the manufacturer of the part thereof claimed to be defective.

The effect of this Colorado provision is to preclude strict tort liability actions against most lessors and bailors. 2 Prod.Liab. (MB) ¶ 16A(4)(b)(iii) (Nov. 1983). Only if defendant is clearly a "seller" and a "manufacturer" as defined in C.R.S. § 13–21–401 *et seq.* will the doctrine of strict liability be applied to defendant.

■ C.R.S. § 13–21–401(3) defines "seller" to include "any individual or entity who is engaged in the business of selling or leasing any product for resale, use or consumption." C.R.S. § 13–21–401(1) defines "manufacturer" as "a person or enti-

---

**2.** *See also Tamburello v. Jaeger*, 249 La. 25, 184 So.2d 544 (1966). In cases involving domestic animals with dangerous propensities, liability generally rests on an ordinary showing of negligence. *See, e.g., Giles v. State*, 106 Misc.2d 329,

431 N.Y.S.2d 781, 784 (1980). Strict liability is not generally applied in determining the liability of a bailor of horses for injuries to the bailee. *See* Annot., 6 A.L.R.4th 358 (1981).

ty who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product prior to the sale of the product to a user or consumer." Whether defendant is a seller or a manufacturer, therefore, depends on whether a saddled horse, or a ride on a horse with a saddle, constitutes a product.[3] Unless I am satisfied that defendant rented or sold a product, C.R.S. § 13–21–402(1) bars an action based on strict liability. Clearly, no person ever designed, assembled, fabricated (except the Greeks at Troy), produced, constructed or otherwise prepared a horse.

■■■ Plaintiffs' contention that a horse and saddle constitute a "product," while a novel idea, is rebutted by case law and the basic underlying policies of the doctrine of strict products liability. Generally, living things do not constitute "products" within the scope of the strict tort liability doctrine which requires that a product's nature be fixed when it leaves the manufacturer's or seller's control. *Anderson v. Farmers Hybrid Companies, Inc.,* 87 Ill.App.3d 493, 42 Ill.Dec. 485, 408 N.E.2d 1194 (1980) (unbred female pigs are not products); *see also Whitmer v. Schneble,* 29 Ill.App.3d 659, 331 N.E.2d 115 (1975) (a dog is not a product).

In an attempt to ascertain what constitutes a "product," courts have focused on the underlying public policy reasons for strict liability and have applied the theory to those who place defective products in the stream of commerce. *Lowrie v. City of Evanston,* 50 Ill.App.3d 376, 8 Ill.Dec. 537, 365 N.E.2d 923 (1977). In this way, courts ensure that the costs of injuries resulting from the placing of defective products in the market are born by the manufacturer, rather than the injured persons who are powerless to protect themselves. *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 377 P.2d 897, 27 Cal.Rptr. 697 (1962). Further, the strict products liability doctrine evolved in response to the difficulty in finding the negligent party and effectuating a recovery from that party. *Wright v. Creative Corporation,* 30 Colo.App. 575, 498 P.2d 1179 (1972).

In this instance, negligence has been clearly alleged in plaintiffs' complaint. Further, there is no problem in identifying the defendants as the ones responsible for the alleged act of negligence. Therefore, the underlying purposes of strict products liability theory will not be served by application in this instance. For these reasons, defendants' motions for summary judgment pertaining to strict products liability are granted.

It is therefore ORDERED that

(1) defendants' motion for partial summary judgment on the claim of *res ipsa loquitur* is granted;

(2) defendants' motion for partial summary judgment on the claim of strict liability for dangerous animals is granted;

(3) defendants' motion for partial summary judgment on the claim for strict products liability is granted; and

(4) defendants' motion for partial summary judgment on the claim for strict liability for failure to warn and/or instruct is granted.

---

**3.** Courts generally have refused to extend the concept of strict liability, as applied in products liability cases, to persons rendering services. *Lewis v. Big Powderhorn Mountain Ski Corp.,* 69 Mich.App. 437, 245 N.W.2d 81 (1976) (no strict liability for the operation of a ski rope tow); *Stuart v. Crestview Mutual Water Co.,* 34 Cal. App.3d 802, 110 Cal.Rptr. 543 (1973) (no strict liability for engineers rendering professional services); *see also,* Annot., 29 A.L.R.3d 1425 (1970). As articulated in *LaRossa v. Scientific Design Company,* 402 F.2d 937 (3d Cir.1968), the rendering of services does not give rise to the doctrine of strict liability because generally, there is no mass production and distribution, nor are there consumers needing protection from an unknown manufacturer or seller. Those courts that have applied the doctrine of strict products liability to those providing a service, have done so only when defective, dangerous products were used. *Newmark v. Gimbels, Inc.,* 54 N.J. 585, 258 A.2d 697 (1969) (strict liability for application of defective wave permanent by beauty parlor); *see* P. Sherman, *Products Liability for the General Practitioner* 238 (1981).