[Civil No. 4009. Filed November 28, 1938.]

[84 Pac. (2d) 588.]

ARIZONA LIVESTOCK COMPANY, a Corporation, Appellant, v. W. D. WASHINGTON and MA-BELLE F. WASHINGTON, His Wife, Appellees.

Messrs. Favour & Baker, and Mr. A. M. Crawford, for Appellant.

Messrs. Patterson & Eastvold, for Appellees.

LOCKWOOD, J.—This is an action by W. D. Washington and Mabelle F. Washington, his wife, hereinafter called plaintiffs, against Arizona Livestock Company, a corporation, hereinafter called defendant, for damages on account of injuries it is alleged Mrs. Washington received as a result of the negligence of the defendant. Judgment was rendered in favor of plaintiffs for $12,500, and after the usual motion for new trial was overruled, this appeal was taken.

According to the undisputed facts of the case, Mrs. Washington was very seriously injured by an attack of a vicious burro, while she was residing in the town

of Ash Fork, in northern Arizona. It is not contended by defendant that her injuries were not severe, nor that the amount of the verdict is excessive compensation therefor, but it is urged most strenuously that it was not legally responsible for the acts of the animal which injured her. The real issue in this case is whether the evidence fairly sustains the conclusion reached by the jury that defendant was the owner, keeper or harborer of the burro which caused the injury to Mrs. Washington, and that, to defendant's knowledge, it was of such a vicious and mischievous disposition that it was negligence for the defendant to allow it to run at large in and about the town of Ash Fork.

The general rule of law in regard to domestic animals not normally vicious is that the owner, keeper or harborer of the animal is liable for injury done by it if it is, in fact, vicious, and the owner knows of its propensities to do mischief. *Perazzo v. Ortega*, 29 Ariz. 334, 241 Pac. 518; Id., 32 Ariz. 154, 256 Pac. 503. It is also the law that the knowledge of the vicious nature need not be actual but may be imputed. *Perazzo v. Ortega, supra.* So knowledge of such propensities by the employees of a corporation, when obtained in the course of their duties as such employees, is imputable to the corporation. *Clowdis v. Fresno Flume & Irr. Co.*, 118 Cal. 315, 50 Pac. 373, 62 Am. St. Rep. 238; *Barrett v. Metropolitan Cont. Co.*, 172 Cal. 116, 155 Pac. 645. The question before us then is whether the evidence is sufficient to justify the jury in finding (a) that defendant was the owner, keeper or harborer of the burro in question at the time of the accident, and (b) was its nature so vicious, to the knowledge of the defendant, that it was dangerous to allow it to run at large in and about the town of Ash Fork.

■■ Defendant strenuously denies that it ever owned or harbored the burro., The evidence, however, in our opinion would fairly justify a finding by the jury that it both owned and harbored it, in the legal sense of the term. The record shows the burro, which was commonly known in that part of the country as "Blue Boy" was being used by the Colin Campbell Livestock Company in its sheep business, in the year 1923. In 1930 the Northern Arizona Securities Company, which is in reality the present defendant under a previous corporate name, had acquired all of the capital stock of the Campbell Company, and a division of certain of the assets of the last-named company was made with the Campbell brothers during that year. The defendant, in this division of assets, acquired certain burros, though it does not appear positively that "Blue Boy" was among the number. Later on, in October, 1933, and for some time thereafter, the same burro was being used by the Grand Canyon Sheep Company in its business, the record showing that this last-named company was owned by defendant. There is also evidence in the record that employees of the defendant were seen driving the burro out of the town of Ash Fork. The continuance of conditions once shown to have existed is presumed and ownership of property proved to have been in one is supposed to there remain until the contrary appears. *State* v. *Dexter,* 115 Iowa 678, 87 N. W. 417. There is no affirmative evidence in the record that the animal was not owned by defendant, except a letter from the president of defendant to Mr. Washington, shortly after the accident, in which he stated:

"Your letter is the first intimation that we have had that the burro was the property of our company. I have never understood this to be the case, and if you can convince me that the burro is the property of our

company I shall be glad to meet you and discuss the matter of settlement.''

· We think that the jury was authorized by this record to find that defendant was the owner and harborer of the burro at the time of the accident.

■■ The next question is, assuming defendant to have been the owner and harborer of the burro, had it such knowledge of its vicious propensities that it was negligence to permit it to run at large on the range in and about Ash Fork. A burro is, to the common knowledge of all residents of the west, ordinarily one of the most gentle and inoffensive of animals, but there are cases when animals of this type become a menace to human beings, and the more so because of their usual reputation for ''peace and quietude.'' It is, therefore, necessary in an action for damages like this to show that the owner had such knowledge of the character of the particular animal as to make it negligence for it to allow the animal to run at large. It would extend this opinion to undue length to discuss all of the evidence on the issue of scienter. It is sufficient to say that we think the jury was authorized to find therefrom that the defendant had knowledge imputed to it that the burro was very apt to attack people who attempted to use it in any manner, although harmless so long as it was not molested. This brings us to the most serious question raised by the appeal.

The testimony of Mrs. Washington shows the circumstances under which she was injured to have been as follows: As she came out of her house in Ash Fork, she noticed a boy on the roof of the garage attempting to put a rope around the neck of this burro, which was then in a vacant lot adjoining her premises. There is some dispute as to whether this lot was fenced or not, but we think this is immaterial. She asked the boy what was the trouble, and he said he wanted to

put a rope on the burro, but "he nips me." She thought that because he was small he might fall off the building, and said, "Well, I will help you," and walked up to the burro with the boy, extending her hand to put the rope over the burro's head, and the next thing she remembered was that it assaulted her.

It is urged most strenuously by defendant that Mrs. Washington was a trespasser when she attempted to aid the boy to catch the burro, and that even assuming that it had knowledge that the animal was dangerous when an attempt was made to rope or ride it, it could not have anticipated, and cannot be held responsible for the result of, the acts of a trespasser. It is, of course, the rule that the owner of an animal of this character is responsible for an injury caused by an event which, under all the circumstances, should have reasonably been anticipated. *Bertram* v. *Burton,* 129 Kan. 31, 281 Pac. 892.

The question then before us is whether, under all the circumstances of the case, taking the evidence most favorably in support of the verdict of the jury, as under our rule we must consider it, the defendant should reasonably have anticipated the possibility of an accident of this nature. In the southwestern country, where animals of the class here involved are accustomed to wander at large upon the open range and in the small towns of the cow country, it is the well known and almost universal custom for practically all of the children in such communities to rope and ride indiscriminately any and all burros running at large, without examination into their ownership, and without question or criticism from the owners of the animals, except where they may need them for their own use, or where they are being abused seriously by the children. This custom is so universal and notorious that we think defendant, engaged for many years in the livestock industry in Arizona, must be

held to have known of it, and if this be true, it must equally have known that a burro, which was accustomed to attack people who attempted to ride or use it, was a menace to the safety of the children of the community, and under such circumstances it was under the duty of exercising reasonable care to see that the burro was kept out of Ash Fork. The rule thus stated is, in many respects, analogous to that of the attractive nuisance. True, it may be said, Mrs. Washington was not a child, and the defendant could not have anticipated that an adult might be in danger. In view of the fact, however, that she was merely following the very common practice of assisting a child to mount an animal of whose vicious nature she had no knowledge, we think the fact that the animal turned upon her instead of the child does not absolve the defendant from negligence in permitting it to run at large. We hold, therefore, that there was sufficient evidence to support a verdict which required that the jury find that defendant was the owner and harborer of the burro which assaulted Mrs. Washington, and that under all the circumstances it was negligence on its part to allow such burro to run at large in and around Ash Fork.

We think it unnecessary to discuss *seriatim* the specific assignments of error as they are either disposed of by what we have already said, or involve merely procedural questions which would not justify a reversal of the case, even if technical error was committed thereby. Art. 6, sec. 22, Const. of Arizona.

The judgment of the superior court is affirmed.

McALISTER, C. J., and ROSS, J., concur.