267 P.2d 1076

WALTER et ux.

v.

SOUTHERN ARIZONA SCHOOL FOR
BOYS, Inc.

No. 5798.

Supreme Court of Arizona.

March 22, 1954.

142

Darrow & D'Antonio, Tucson, for appellants.

Darnell, Robertson, Holesapple & Spaid, Tucson, by Richard R. Fish, Tucson, for appellee

PHELPS, Chief Justice.

This is an appeal from a judgment in favor of Southern Arizona School For Boys, Inc., a corporation, defendant-appellee, against C. J. Walter and Constance Walter, his wife, plaintiffs-appellants.

Appellants sued to recover damages in the superior court of Pima County against appellee and one Clifford E. Hamlin, as defendants, based upon the allegations that appellee as principal and Clifford E. Hamlin as agent were the owners, keepers or harborers of a horse (named Stinger) with certain propensities, tendencies and characteristics of a nature to cause injury to mankind; that with knowledge of such vicious propensities they kept and harbored it on the property of appellee; and that on the 8th day of November, 1951, said Clifford E. Hamlin with knowledge of its vicious and malicious habits and without informing appellant C. J. Walter of such vicious habits requested him to ride it. Appellant, an experienced horseman, acceded to the request and after the horse had been saddled, carefully mounted it; that immediately after he had mounted, Hamlin negligently, carelessly and without warning to appellant released his hold upon the bridle, whereupon the horse reared up and over so as to fall upon appellant causing him severe physical injury. Defendants, in a joint answer, denied generally and specifically all of the allegations of the complaint and alleged that any injury suffered by Walter was caused by or contributed to by him. Later by

amendment, defendants pleaded assumption of risk.

At the close of the plaintiffs' evidence, the trial court directed a verdict in favor of defendant-appellee and ordered the trial to proceed as to defendant Hamlin, on the theory of an action in negligence. The court withdrew from the jury at that time the consideration of the question of keeping and harboring a vicious horse with knowledge of its vicious and malicious propensities, tendencies and characteristics. It stated in its instruction to the jury as follows:

> " * * * Now, I have taken the element about the corporate liability for harboring a vicious horse out of the case, and you no longer have that to consider at all. I think you clearly understand it that the Southern Arizona School for Boys no longer is in any way connected with this case, and that it is solely Walter on one side and Hamlin on the other.

> "Walter alleges that Hamlin was negligent in the manner in which he conducted the incident in which Walter attempted to mount the Hamlin horse, *and that is the case to be decided by you—was Hamlin negligent or was he not."* (Emphasis supplied.)

The jury returned a verdict in favor of Hamlin and against Walter. Judgment was entered thereon and no appeal was taken therefrom. Therefore, we are concerned here only with the question of whether there was error in directing a verdict in favor of appellee at the close of appellants' case. We are presented with three assignments of error all of which are grounded squarely upon that question.

To determine this issue we must of necessity look to the evidence. It is the law generally and in this jurisdiction that any person who keeps or harbors a domestic animal not normally vicious with knowledge of its vicious tendencies or propensities is liable in damages to another for any injury caused by it unless it is shown that the injured person, with knowledge of its viciousness, did something to such animal which caused it to injure him. Arizona Livestock Co. v. Washington, 52 Ariz. 591, 84 P.2d 588. It is also the law that knowledge of the agent or servant of the vicious tendencies of the animal is imputable to the principal if the care or control of the animal is within the scope of the agent's employment. United States Fidelity & Guaranty Co. v. Millonas, 206 Ala. 147, 89 So. 732, 29 A.L.R. 520. Therefore, if the evidence discloses that the horse in question did possess vicious tendencies or propensities which were known to Hamlin, the knowledge thereof was imputed to appellee, Perazzo v. Ortega, 32 Ariz. 154, 256 P. 503; Navajo-Apache Bank & Trust Co. v. Willis, 21 Ariz. 610, 193 P. 297 and the question of whether the horse was vicious should have been submitted to the jury.

Let us now examine the evidence bearing upon the vicious traits, tendencies

or propensities of the horse claimed by appellants to have been proved. In our search for the answer to this question where the appeal is from a judgment based upon an instructed verdict for the defendant, we are charged with the duty of viewing all evidence touching upon the question where it is in conflict in the manner most favorable to the plaintiff. Nichols v. City of Phoenix, 68 Ariz. 124 at page 129, 202 P.2d 201 at page 204; Cope v. Southern Pac. Co., 66 Ariz. 197, 185 P.2d 772.

First, we have the testimony of appellant C. J. Walter, a recognized horseman, who testified that immediately upon mounting the horse and the releasing of the reins by Hamlin the horse reared up, fell over on his back and rolled on Walter on the left side; that he at all times held a slack rein on the horse. This testimony, however, was disputed by Hamlin who stated the horse did not rear up and fall backwards but that Walter became overbalanced as he attempted to mount. His right rein was too short and he jerked the bit causing the horse to go backwards and hit a post (causing him to fall).

The witness Estelle Gilbert, a horsewoman of several years' experience in rodeo riding, in teaching horseback riding and in performing at Madison Square Garden rodeos, stated she had knowledge of the horse Stinger for over a year prior to the time appellant C. J. Walter was injured. At that time she said he was a young animal and consequently frisky. He was trained as a stop horse. She rode him approximately five times a week for two and a half to three months. She said he was nervous and that Hamlin cautioned her not to get bucked off. She further stated that Hamlin told her that a wrangler at the Spiller ranch got bucked off of Stinger and later a "smart kid" got "dumped off". Apparently there is a difference between "bucked off" and "dumped off". She says one may be "dumped off" if a horse stops suddenly as he is trained to do, if the rider is not on the alert. She did not say the horse ever reared up with her or that it ever attempted to buck her off or that she ever saw it rear up or attempt to buck anyone off. She said the horse had a soft mouth as a stop horse necessarily had.

John Buchanan Markley, witness for the defendant, said he was 13 years old and had been riding since he was four or five years of age; that he was attending appellee's school; that he had ridden Stinger 15 to 25 times; that the horse had a good, calm disposition; that he never reared up with him or attempted to buck him off; that he was a gentle horse, almost a pet; that he was trained as a stop horse and that the only thing that would make him back up would be to pull on the reins or to jump off of him if you had just roped a calf.

Alexander James McCauley, another witness for the defense, testified that he was a riding master at appellee's school, and had been around horses all of his life and acted as a judge of horses for the American

Horse Show Association and was a horse trainer. He said that he had known Stinger for about seven months and that he had a very nice disposition; that he would come up and nose you. He was very gentle, he said, and was well trained for roping. He said that he had never seen anyone hold the horse for another person to mount him; that the mouth of a roping or stop horse is tender and if you put pressure on the bit while mounting, he will back up and is apt to throw a person off balance who is attempting to mount him.

Roddy B. Burdine, another school boy, 16 years of age, was a witness for the defense. He said that he had known Stinger for about two years and had ridden him 25 or 30 times. He had been riding six or seven years and had been riding western horses three and a half years. He said Stinger had a good disposition and was very calm and it was never necessary for anyone to hold the bridle when he was mounting him. He said that in mounting he always held the reins slack. He never reared up or bucked him off.

■ This constitutes in substance all of the evidence bearing upon the vicious tendencies of Stinger. No witness except appellant C. J. Walter testified that Stinger had ever reared up or run backwards while being mounted. No one said they had ever seen him buck or dump anyone off. The only testimony upon this point is that of Miss Gilbert that Hamlin, one of the defendants in the trial court, told her before

the accident occurred, that Stinger had bucked off one of the wranglers at the Spiller ranch and that they all had a laugh about it; that one of the "smart kids" at the Spiller ranch had been dumped off by Stinger. Hamlin unequivocally denied that he had ever made either of said statements to her. No question is raised on appeal as to the admissibility of Miss Gilbert's testimony as to what Hamlin told her, and it appears to be the rule that, although it was in the nature of hearsay, it was admissible as an admission against interest as to Hamlin and that it was admissible against appellee upon the ground that it was a statement or declaration of its agent before the accident occurred, about the conduct of a horse the control of which fell within the scope of his employment. United States Fidelity & Guaranty Co. v. Millonas, supra.

■ If Stinger had bucked anyone off before appellant was injured, it would tend to establish the vicious propensity of the horse and if the jury believed appellant was injured as a result of a vicious tendency or propensity, then the previous incident where the rider was bucked off would be sufficient to charge Hamlin with knowledge of his vicious propensities and Hamlin's knowledge being imputed to appellee, such proof would make out a case against appellee. Perazzo v. Ortega, supra; Smith v. Royer, 181 Cal. 165, 183 P. 660.

■ While we recognize the weakness of appellants' proof tending to establish that Stinger possessed any vicious tendencies or

propensities, we believe that the evidence is such that viewing it in the light most favorable to plaintiffs-appellants, reasonable men might have drawn different inferences from it on the question of the viciousness of the horse in question, and that the case, therefore, should have been submitted to the jury for the ascertainment of that fact.

 It is the contention of the appellee in this connection that the judgment in favor of Hamlin at the hands of the jury is res judicata as to appellee and that the appellants have no standing whatever in court. We do not agree with this contention for the reason that as above shown by the instruction of the court in the trial of the Hamlin case that it expressly narrowed the issues down to one of negligence and specifically limited the negligence to that of Hamlin in the manner in which he assisted Walter in his attempt to mount the horse. He withdrew from the jury any consideration of the question of viciousness of the horse.

Another contention of appellee is that Walter was a trespasser upon appellee's premises at the time he was injured and that it owed no duty to a trespasser. We are of the view that Walter was at least a licensee upon the premises, under the definition of a licensee in Muench v. Heinemann, 119 Wis. 441, 96 N.W. 800–802; Barry v. Southern Pac. Co., 64 Ariz. 116, 166 P.2d 825, and after he accepted Hamlin's invitation to ride Stinger he became an invitee as to him. Other propositions of law raised by appellee not hereinabove discussed we believe to be without merit.

The judgment of the trial court is reversed and the cause remanded for a new trial.

STANFORD, LA PRADE, UDALL, and WINDES, JJ., concurring.