Donald H. HALE and Betty A. Hale, Appellants,

v.

Michael O'NEILL and Onnolee O'Neill, Appellees.

No. 1358.

Supreme Court of Alaska.

Dec. 30, 1971.

Thomas E. Curran, Jr., of Savage & Curran, Anchorage, for appellants.

James M. Powell and Jerry E. Melcher, of Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellees.

Before BONEY, C. J., and RABINO-WITZ, and CONNOR, JJ.

## OPINION

CONNOR, Justice.

This action stems from an equestrian mishap involving a spirited gelding named "Pepper".

Plaintiff Donald Hale, a relative of the defendants, was a frequent visitor at the O'Neill home and had ridden Pepper at least six times. Hale grew up on a farm where he had some experience riding horses.

On July 4, 1969, at the O'Neills' home, Hale saddled and mounted Pepper without any trouble. He rode Pepper into a neighbor's field, where several other horses were standing about. Pepper bucked a few times upon seeing the other horses, then settled down. Hale then rode Pepper around the area and finally put him into a run. When Pepper was running at a full gallop, Hale attempted to slow him, but Pepper had gotten the bit in his teeth and Hale could not check him with the reins. Pepper then began to swerve, tripped on some uneven ground, and Hale fell from the horse, suffering a broken ankle.

On September 3, 1969, Hale filed suit against the O'Neills. On a record consisting of the depositions of Michael O'Neill, Onnolee O'Neill and Donald Hale, as well as an affidavit of Donald Hale, the superior court granted summary judgment for the defendants.

Hale based his claim for damages on the doctrine of strict liability for injuries caused by a domestic animal with known dangerous tendencies. On this basis an owner of a domestic animal becomes liable, regardless of fault, for injuries caused by the animal which stem from a vicious propensity, known to the owner. The essential elements of this cause of action are (1) that the animal's owner knew or should have known that the animal had a dangerous tendency, and (2) that this dangerous tendency resulted in injury to the claimant.[1]

Appellant contends that summary judgment in favor of the animal's owners was improper. He asserts that trial should have been had on a genuine issue of fact: whether the O'Neills knew of Pepper's dangerous tendency to bolt and swerve. Appellants' second contention is that the lower court based the decision to grant summary judgment on the doctrine of assumption of risk. Appellants claim that

---

1. Prosser, The Law of Torts, § 76, at 499–501 (4th ed. 1971).

there was insufficient evidence of assumption of risk, and that assumption of risk is no longer a valid defense in the State of Alaska.

We have concluded that summary judgment was proper. The superior court necessarily would have had to consider all of the evidence introduced by the parties' affidavits and depositions in a light most favorable to Hale for the purpose of passing on the O'Neills' motion for summary judgment. Wilson v. Pollet, 416 P.2d 381 (Alaska 1966). The court, therefore, was required to accept as a fact that Pepper was vicious and that the O'Neills knew of his vicious tendencies. Nevertheless the court granted the O'Neills' motion for summary judgment, finding that Hale's injuries were proximately caused by his own fault in riding a horse he knew to be dangerous. The question, therefore, is not whether there is conflicting evidence about the O'Neills' knowledge of Pepper's propensities. The real question is whether, based on Hale's undisputed testimony as to the circumstances of the accident and his previous experience with Pepper, summary judgment was required as a matter of law.

 Hale contends that the lower court rested its decision to grant summary judgment entirely on the defense of assumption of risk. Under our decision in Leavitt v. Gillaspie, 443 P.2d 61 (Alaska 1968), assumption of risk is no longer a distinct defense in negligence actions in Alaska. However, as we recently stated in Young v. State, 491 P.2d 122 at 125 (Alaska 1971), 1971),

"Although in Leavitt v. Gillaspie, 443 P.2d 61 (Alaska 1968), we disapproved of the assumption of risk defense, that case does not preclude defensive use of

conduct by which a person negligently exposes himself to an unreasonable risk of harm. In other words, if a plaintiff voluntarily and *unreasonably* assumes a negligently created risk, his conduct amounts to contributory negligence and he is barred from recovery." (Emphasis in original text.)

 In Bachner v. Pearson, 479 P.2d 319, 328–330 (Alaska 1970), we held that contributory negligence, in the form of unreasonably and voluntarily exposing oneself to a known risk, was available as a defense to a claim of strict liability for injury caused by a defective product. We see no reason for not applying the same principle here. In the instance of strict liability for keeping a domestic animal, known to be dangerous, a large number of jurisdictions hold that contributory negligence of this type is a bar to recovery.[2] We are convinced that this is the proper standard to employ. To hold otherwise would confer a bonus upon those who, with full knowledge, insist upon taking unreasonable risks and acting irresponsibly.

 The final question is whether Hale's conduct amounts to contributory negligence as a matter of law. Hale contends in his affidavit that his injury was caused by Pepper's dangerous tendency to swerve and bolt. Hale claimed that the O'Neills did not warn him of this tendency. If warned, he would not have ridden the horse in the way that he did. Whether Hale was actually warned of Pepper's tendency to swerve and bolt is irrelevant because Hale's deposition reveals that he was fully aware of Pepper's dangerous proclivities.

Hale stated in his deposition that he had ridden Pepper six times before the acci-

---

2. *Id.* at 523. The Kentucky Court of Appeals, which like Alaska has abolished the defense of assumption of risk, has held that contributory negligence is a valid defense in strict liability cases against owners of domestic animals. Adams v. Crandall, 418 S.W.2d 730, 731 (Ky. 1967). See also Eberling v. Mutillod, 90 N.J.L. 478, 101 A. 519 (1917); Hosmer v. Carney, 228 N.Y. 73, 126 N.E. 650 (1920); Warrick v. Farley, 95 Neb. 565, 145 N.W. 1020 (1914); Frederickson v. Kepner, 82 Cal.App.2d 905, 187 P.2d 800 (1947); Swerdfeger v. Krueger, 145 Colo. 180, 358 P.2d 479 (1960); Tamburello v. Jaeger, 249 La. 25, 184 So.2d 544 (1966).

dent. He also knew that horses would tend to buck when they had not been ridden for long periods of time. According to Hale, however, Pepper's worst characteristic was that, "he'd get the bit in his mouth, and once this happened, why it was pretty hard to control him or to get his head up so that you could control and stay astride him . . . and he'd also get to swerving once he'd got into a full gallop." In addition Hale said that "I was aware of the fact that the animal, when he hadn't been ridden for long periods of time, was unpredictable." Hale stated both in his deposition and his affidavit in opposition to the motion for summary judgment that the O'Neills asked him to ride Pepper to gentle him so that the neighborhood children could ride the horse. According to Hale, they told him that the horse required gentling because he hadn't been ridden from autumn until the time of Hale's injury in July. From Hale's own description of the accident, it is apparent that Pepper's tendency to swerve and bolt, which he alleges caused his injury, was the same tendency of the horse to swerve and take the bit in its mouth which Hale testified he was aware of prior to the accident. Hale described the accident as follows:

" . . . he'd seemed as though he'd settled down pretty well then, so I let him run, heading back up over the hill to the West, and when I tried to slow him down, he got the bit in his teeth, and when I started to check him or rein in on him, why he started swerving at a pretty high speed. I mean he was running pretty fast."

Although Hale claims that the O'Neills should be liable for his injuries because of their alleged failure to warn him of Pepper's tendency to swerve and bolt, it is clear from his own testimony that he was fully aware of these tendencies before he mounted Pepper on the day of the acci-

dent. Not only was he fully aware of these dangerous tendencies, he knew that they might be aggravated, since Pepper had not been ridden for a long period of time.

In the light of Hale's own testimony concerning his knowledge of Pepper's bad tendencies and his description of the accident, we conclude that summary judgment in favor of the defendant O'Neills was appropriate in this case.

We agree with the rule concerning horseback riding accidents enunciated by the California Court of Appeals in O'Brien v. Gateway Stables, 104 Cal.App.2d 317, 231 P.2d 524, 526 (1951),

"[I]f the owner knowingly keeps a mean or vicious beast, he is liable for injuries to another who has been invited to the premises where the animal is kept, or to a person whom the owner has allowed to use the horse without first having been advised of its vicious proclivities. (citations omitted.) But the owner of a horse is not liable for injuries caused to another while riding or driving the animal with the owner's permission if the latter has no knowledge of his animal's untrustworthiness, *or if the user knows of the latter's vices.*" (Citations omitted; emphasis added.)

Contributory negligence, like negligence, is not often determinable as a matter of law.[3] But in this case the evidence concerning the plaintiff's negligence in riding a horse he knew to be dangerous, is uncontradicted. We feel that reasonable men could draw only one inference from the evidence in this case: The plaintiff himself was negligent, and this negligence was the proximate cause of his injury.

Judgment affirmed.

ERWIN, J., not participating.

3. Patterson v. Cushman, 394 P.2d 657 (Alaska 1964); Harris v. Barrett & Lesh, Inc., 426 P.2d 331 (Alaska 1967); Frederickson v. Kepner, 82 Cal.App.2d 905, 187 P.2d 800 (1947); Adams v. Crandall, 418 S.W.2d 730 (Ky.1967).