536 P.2d 713

Mary Alice VIGUE, a minor, by her mother and guardian ad litem, Sharon Rector, Appellant,

v.

Victor NOYES, Jr., a minor, D. K. Gibson and Audean Gibson, husband and wife, dba Horseshoe Acres, a stable doing business in Tucson, Appellees.

No. 2 CA–CIV 1768.

Court of Appeals of Arizona, Division 2.

June 13, 1975.

Rehearing Denied July 15, 1975.

Review Granted Sept. 25, 1975.

Rees, Mercaldo & Smith, P.C. by Ronald D. Mercaldo and Brian E. Smith, Richard M. Davis, Tucson, for appellant.

Gaynor K. Stover, Tucson, for appellee Noyes.

· John L. Claborne, Springerville, for appellees Gibson.

## OPINION

HOWARD, Chief Judge.

Appellant sued appellees for the minor's personal injuries occasioned by being kicked by a horse named Whiskey. The jury returned a verdict of $160,000 against the appellees at which time the trial court invited a motion for judgment N.O.V. and granted it.

At the time of the accident appellee Victor Noyes, Jr. was fourteen years of age. His parents had purchased Whiskey for him and he had paid them back by working for his father. Whiskey was boarded at Horseshoe Acres, owned by the appellees Gibson. Sharon Rector is the mother of Mary Alice Vigue who was four and one-half years of age at the time of the accident. Sharon Rector also boarded her horse, "Teabag", at Horseshoe Acres.

The facilities at Horseshoe Acres consisted of a barn, tack room and a series of individual stalls. The stalls, in the nature of mini-corrals, were 25′ x 17′ area enclosed by a fence made of metal pipes. Each stall had a ramada to protect the horse from the elements and opened out into a fenced arena. The Gibsons' residence was also on the premises.

While cleaning a stall, the owner of a horse would let it into the arena which had some patches of grass on which the horse could graze. The arena was also used for riding and training the horses. There was

a bench inside the arena and the rule's incorporated into the rental agreement signed by Sharon Rector provided that children and guests were to use the bench in the arena so as not to create a safety hazard.

On the day of the accident appellee Noyes went to the stable to clean the stall and ride Whiskey. The horse was let into the arena during the cleaning. Following the cleaning, Noyes went to the barn to look for his hackamore and left Whiskey unattended. There he briefly talked to Sharon who, accompanied by her daughter and a young girl named Kathy Brumbelow, had come to feed Teabag. Kathy started to help Noyes look for the hackamore. Sharon got some buckets of seed and with Mary at her side started across the arena to see Teabag. Sharon Rector testified that she heard Whiskey sniffing behind her, shooed him away several times, told him to go away and finally Whiskey turned and went towards his pen. She then stated that when she and Mary reached Teabag's stall Whiskey galloped by and kicked, striking Mary in the head. As a result, Mary suffered serious injuries. Other pertinent facts shall be set forth in our discussion of the applicable legal principles.

The sole issue is whether the evidence precluded the trial court from entry of the judgment N.O.V.

■ A domesticated animal is presumed not to be vicious or dangerous, Moessinger v. Johnson, 292 So.2d 606 (Fla.App.1974); Mungo v. Bennett, 238 S.C. 79, 119 S.E.2d 522 (1961).

Cases which impose liability on the possessor of a domestic animal for harm done by the animal can be broken down into two broad categories: first, those cases where the possessor has reason to known or should know that the animal had a dangerous propensity abnormal to its class. Second, those cases which impose liability on the possessor for failure to control the animal.

Under the first category, "scienter" is an essential element. The courts, however, are not unanimous as to whether the gist of such an action is strict liability or negligence. Restatement of Torts § 509 makes the possessor of such dangerous animals strictly liable. See also Prosser, The Law of Torts, 4th ed. § 76 at 499–501. Hale v. O'Neill, 492 P.2d 101 (Alaska 1971). All that a plaintiff need prove in a strict liability case is (1) that the animal owner knew or should have known that the animal had a dangerous tendency and (2) that this dangerous tendency resulted in injury to the plaintiff. Thus liability is imposed even though the possessor has exercised the utmost care in preventing the animals from causing harm.

Other courts have rejected the theory of strict liability and hold that the gist of the action is the owner's negligent failure to properly restrain the animal when he knows or should know of the animal's dangerous propensity. Tom v. Days of '47, Inc., 16 Utah 2d 386, 401 P.2d 946 (1965).

Arizona does not follow the rule of strict liability in dealing with domestic animals which are abnormally dangerous but instead bases the action on negligence. Arizona Livestock Company v. Washington, 52 Ariz. 591, 84 P.2d 588 (1938).

■ When the action is based upon the dangerous or vicious propensities of the animal, the plaintiff must show that the animal was inclined to commit an injury of the class complained of and that the person sought to be held liable had knowledge or should have had knowledge of these dangerous propensities. Ewing v. Prince, 425 S.W.2d 732 (Ky.1968); Herbert v. Ziegler, 216 Md. 212, 139 A.2d 699 (1958); Finneran v. Wood, 249 Md. 643, 241 A.2d 579 (1968).

■ In the second category of cases the possessor has no reason to know the ani-

mal is abnormally dangerous, but the animal is likely to do harm unless controlled. Liability on this basis is epitomized by Restatement of Torts § 518:

> ". . . one who possesses or harbors a domestic animal, which he does not have reason to know to be abnormally dangerous but which is likely to do harm unless controlled, is subject to liability for harm done by such animal if, but only if,
>
> (a) he fails to exercise reasonable care to confine or otherwise control it, and
>
> (b) the harm is of a sort which is normal for animals of its class to do."

\*   \*   \*   \*   \*   \*

Liability under Restatement of Torts § 518 can also be predicated, under certain circumstances, on the failure to warn of a dangerous propensity which is normal to the particular class of animal. Thus in Flynn v. Lindenfield, 6 Ariz.App. 459, 433 P.2d 639 (1968), we held that, because of the natural tendency of a mare to protect its young, an owner of a mare and young colt could be held negligent in failing to warn a fifteen year-old babysitter not to bring children near the corral.

■ Appellant has set forth in her brief several "incidents" which she claims show that Noyes knew or should have known of Whiskey's dangerous propensities. None of these, however, show that Whiskey was inclined to kick or otherwise harm human beings and the trial was correct in not submitting this issue to the jury.

■ The court did, however, submit the case to the jury on the basis of simple negligence without the "scienter" factor. Appellees introduced evidence that Sharon Rector stated immediately after the accident that Mary was sitting on the rail on Teabag's stall when Teabag bit Whiskey who then kicked Mary. Also, that Sharon at later times stated she did not know which horse kicked Mary. From this evidence the jury could have believed that Teabag bit Whiskey and that Whiskey, the horse which was bitten, did the kicking.

Is there then a question of negligence on the part of Noyes which created a jury issue? We believe so. The nature of Horseshoe Acres is important in the determination of negligence. We are not dealing with an ordinary private corral but rather with an arrangement shared by several owners of horses. It can reasonably be foreseen that other owners will be present in the arena while feeding their horses, exercising them, and cleaning stalls. In fact, Noyes knew of the presence of Mary and her mother. Furthermore, the propensity of horses to fight with and bite each other is a normal trait of horses. It could well be foreseen that leaving Whiskey unattended in the arena, free to wander to the various stalls would lead to the exact harm which took place here. There was therefore a jury question as to whether Noyes was negligent in leaving Whiskey unattended while he searched for his hackamore. The jury resolved the question in appellant's favor and its verdict against appellee Noyes should stand.

■ As to the stable owners, however, there was no evidence that they were harboring a dangerous animal or knew of any dangerous propensities. Nor was there any evidence of negligence on their part.

The judgment in favor of appellee Noyes is set aside and the trial court is ordered to reinstate the jury verdict against him and enter judgment thereon in appellant's favor.

The judgment in favor of the appellees Gibson is affirmed.

KRUCKER and HATHAWAY, JJ., concur.