550 P.2d 234

Mary Alice VIGUE, a minor, by her mother and guardian ad litem, Sharon Rector, Appellant,

v.

Victor NOYES, Jr., a minor, D. K. Gibson and Audean Gibson, husband and wife, dba Horseshoe Acres, a stable doing business in Tucson, Appellees.

No. 12237–PR.

Supreme Court of Arizona,
In Banc.

May 24, 1976.

Rehearing Denied June 16, 1976.

Rees, Mercaldo & Smith, P.C. by Ronald D. Mercaldo and Brian E. Smith, Richard M. Davis, Tucson, for appellant.

Gaynor K. Stover, Tucson, for appellee Noyes.

John L. Claborne, Springerville, for appellees Gibson.

GORDON, Justice:

We granted this petition for review in order to clarify Arizona law relating to the liability of the possessor of a domestic animal other than a dog for injuries caused to third parties. The plaintiff-respondent, Mary Alice Vigue, a minor received serious injuries when she was kicked by a horse owned by the defendant-petitioner, Victor Noyes. The jury returned a verdict in favor of the respondent in the sum of $160,000, after which the trial court invited and granted a motion for judgment notwithstanding the verdict pursuant to Rule 50(b) of the Arizona Rules of Civil Procedure.

In addition to Noyes, the verdict was against D. K. and Audean Gibson, husband and wife, owners of Horseshoe Acres, the stables at which the accident occurred. They are not parties to this appeal because the appellant failed to file a petition for review of that portion of the Court of Appeal's decision which affirmed the trial court's entry of judgment N.O.V. in the Gibson's favor.

Noyes was fourteen years of age at the time and boarded his horse, Whiskey, at Horseshoe Acres. Mary Alice Vigue was four and one-half years of age at the time of the accident. Her mother, Sharon Rector, also boarded her horse Teabag at Horseshoe Acres. The facilities there consisted of a barn, tack room and a series of individual stalls with fences made of metal pipes. Each stall opened out into a fenced arena.

While cleaning a stall, the owner of a horse would let it into the arena to wander or graze on scattered patches of grass. The arena was also used for riding and training the horses. The rules incorporated into the rental agreement signed by Sharon Rector provided that children

and guests were to use a bench situated inside the arena so as not to create a safety hazard.[1]

On the day of the accident Noyes let Whiskey into the arena while cleaning his stall. Following the cleaning, Noyes went to the barn to look for his hackamore and there encountered Rector who, accompanied by her daughter and a young girl named Kathy Brumbelow, had come to feed Teabag. While Brumbelow started to help Noyes look for the hackamore, Rector got some buckets of seed and with Mary at her side started across the arena towards Teabag. Rector testified that she heard Whiskey sniffing behind her and after shooing him away several times he turned and left. She then stated that when they reached Teabag's stall Whiskey galloped by and kicked, narrowly missing her and striking Mary in the head. As a result, Mary suffered serious injuries, including brain damage and a loss of sight in her left eye.

The Court of Appeals in *Vigue v. Noyes,* 24 Ariz.App. 144, 536 P.2d 713 (1975) affirmed the trial court's entry of judgment N.O.V. as to the Gibsons, concluding that there was no evidence that the stable owners were negligent or were harboring a dangerous animal or knew of any dangerous propensities. The judgment in favor of Noyes, however, was set aside as the Court found there was a jury question as to whether he was negligent in leaving Whiskey unattended while he searched for his hackamore.

■ The possessor of a domestic animal other than a dog may be subject to liability under either a strict liability or negligence theory for harm caused by it to others.[2] Strict liability is imposed where the person had reason to know prior to the damage causing event that the animal had dangerous propensities abnormal to its class. *Hale v. O'Neill,* 492 P.2d 101 (Alaska 1971); *Flynn v. Lindenfield,* 6 Ariz.App. 459, 433 P.2d 639 (1967). Restatement of Torts § 509. Cf. *Arizona Livestock Company v. Washington,* 52 Ariz. 591, 84 P.2d 588 (1938). An exception exists where it is "shown that the injured person, with knowledge of its viciousness, did something to such animal which caused it to injure him." *Walter v. Southern Arizona School for Boys,* 77 Ariz. 141, 267 P.2d 1076 (1954). The exception extends to instances where an individual has assumed the risk or is contributorily negligent, such as where someone rides a horse with knowledge of its vices or enters a yard where a vicious dog is kept despite warnings that he should keep out. *Hale v. O'Neill,* supra; *Adams v. Crandall,* 418 S.W.2d 730 (Ky.App.1967). See also *Swerdfeger v. Krueger,* 145 Colo. 180, 358 P.2d 479 (1960). The law does not require "any particular number of instances of unprovoked attack or injury to show a vicious disposition in an animal, and the jury may draw such inferences from a single act, especially if it be an attack upon a person." *Perazzo v. Ortega,* 29 Ariz. 334, 241 P. 518 (1925). The requisite knowledge may be actual or constructive, such as where the possessor's agent or spouse has been informed of the animal's inclination. *Perazzo v. Ortega,* 32 Ariz. 154, 256 P. 503 (1927); *Benke v. Stepp,* 199 Okl. 119, 184 P.2d 615 (1947). A possessor of a domestic animal who is chargeable with knowledge of its dangerous propensities is bound to keep the animal secured at his peril and the fact that it escapes does not relieve him from

---

1. A four and one-half year old child cannot be contributorily negligent as a matter of law. *Womack v. Preach,* 64 Ariz. 61, 165 P.2d 657 (1946). In addition, a parent's negligence may not be imputed to an innocent child in an action for personal injuries. *DeLozier v. Smith,* 22 Ariz.App. 136, 524 P.2d 970 (1974).

2. A.R.S. § 24–521 imposes liability on a dog owner for the animal's first bite "regardless of the former viciousness of the dog or the owner's knowledge of its viciousness." See also A.R.S. § 24–378.

liability for injuries inflicted. *Barger v. Jimerson,* 130 Colo. 459, 276 P.2d 744 (1954).

■ We agree with the Court of Appeals that the record is devoid of sufficient evidence from which the jury could reasonably conclude that Whiskey had exhibited any dangerous propensities prior to the accident which is the subject of this case. The fact that the horse had damaged his stall by kicking at flies, was a "real good eater", occasionally crowhopped (stopped suddenly with stiff front legs) causing his owner to slide off and allegedly acted "funny" on the day of the accident in no way tends to establish that Whiskey was vicious.

■■ The question thus becomes whether Noyes may be subjected to liability on a negligence theory. Restatement of Torts § 518 states in part:

"LIABILITY FOR HARM DONE BY DOMESTIC ANIMALS WHICH ARE NOT ABNORMALLY DANGEROUS

" * * * [O]ne who possesses or harbors a domestic animal, which he does not have reason to know to be abnormally dangerous but which is likely to do harm unless controlled, is subject to liability for harm done by such animal if, but only if,

"(a) he fails to exercise reasonable care to confine or otherwise control it, and

"(b) the harm is of a sort which it is normal for animals of its class to do.

* * *"

This subsection is applicable to domestic animals such as a horse or cow which can be confined to the premises of their keepers or otherwise kept under control without seriously affecting their usefulness and which are not abnormally dangerous. The utility of these animals is sufficient to justify their being kept without risk of the strict liability stated in § 509. The owner or keeper is required to know the normal habits and tendencies of animals of its class, realizing that even ordinarily gentle animals are likely to be dangerous under particular circumstances.

■ We agree with the Court of Appeals that sufficient evidence was presented to the jury for them to conclude that Noyes failed to exercise reasonable control over Whiskey by allowing it to roam unattended in the arena, as it can reasonably be foreseen that other owners will be present in the arena while feeding their horses, exercising them, and cleaning stalls. Testimony presented at the trial indicates that Noyes, in fact, was aware that Rector and her daughter Mary were walking across the arena with feed moments before the incident occurred. Having satisfied subsection (a) of § 518, however, the plaintiff failed to show as required by subsection (b) that "the harm is of a sort which it is normal for animals of its class to do." The fact that Noyes testified his horse might follow someone carrying feed across the arena, or that Rector allegedly stated soon after the incident that Teabag bit Whiskey just before Mary was kicked does not allow a court to take judicial notice that "the propensity of horses to fight with and bite each other is a normal trait of horses." There is no evidence to support such a statement and "[i]n order for any tribunal * * * to take judicial notice of any fact, it must be so notoriously true as not to be subject to reasonable dispute or must be capable of immediate accurate demonstration." *Phelps Dodge Corp. v. Ford,* 68 Ariz. 190, 203 P.2d 633 (1949). See *Utah Construction Co. v. Berg,* 68 Ariz. 285, 205 P.2d 367 (1949). Even "[a] high degree of probability of the truth of a particular proposition cannot justify a tribunal in taking judicial notice of its truth." *Bade v. Drachman,* 4 Ariz.App. 55, 417 P. 2d 689 (1966).

■ It is true that liability under Restatement of Torts § 518 can be predicated, under certain circumstances, on the failure to warn of a dangerous propensity which is normal to the particular class of animal. This was the case in *Flynn v. Lindenfield,*

supra, where it was held that the trial court improperly granted the defendant's motion for summary judgment partially because affidavits submitted on behalf of the plaintiff by two persons experienced in animal husbandry indicated there was a question of fact for the jury as to whether the keepers of a mare and colt were negligent in not warning their babysitter-employee that the mother would instinctively protect her young. No evidence was presented in the instant case, however, from which reasonable men might infer that a horse such as Whiskey would normally become vicious in these circumstances toward other horses, young children or persons carrying feed.

The portion of the Court of Appeals' opinion which set aside the trial court's entry of judgment N.O.V. pursuant to Civil Rule 50(b) in favor of appellee Noyes is vacated; that portion of the trial court's decision is hereby affirmed.

STRUCKMEYER, V. C. J., and HAYS, J., concur.

HOLOHAN, Justice (dissenting).

There is much in the majority opinion with which I agree, but I dissent from the result and conclusion reached by the majority affirming judgment N.O.V. in favor of defendant Noyes. I agree with the conclusions reached by the Court of Appeals which reversed the superior court's action in setting aside the jury verdict for the plaintiff.

The Court is in agreement that the principles of law are correctly stated in the Restatement of Torts § 518, but the differences arise in determining whether the harm caused was of the sort which was normal for animals of this class.

The Restatement comment on subsection b of § 518(1) seems to be at variance with the majority's position:

"d. This Subsection is applicable to those domestic animals of a class which can be confined to the premises of their keepers or otherwise kept under constant control without seriously affecting their usefulness and which are not abnormally dangerous. While the utility of such animals is sufficient to justify their being kept without risk of the strict liability stated in § 509, many of them are recognizably likely to do substantial harm while out of control and, therefore, their keepers are under a duty to exercise reasonable care to have them under a constant and effective control. *Thus, there is a likelihood that even a well-broken mare or gelding which had never shown a propensity to bite or kick may do so when running loose.* This is sufficient to require its keeper to exercise reasonable care to keep it under constant control." (Emphasis supplied.)

The majority finds no foundation to support the Court of Appeals position that horses have, as a normal trait, a propensity to fight and bite each other. Apparently the majority also disagrees with the authorities from other states which support the position of the Court of Appeals in this case. *See Finneran v. Wood,* 249 Md. 643, 241 A.2d 579 (1968); *Smith v. Benson's Wild Animal Farm,* 109 A.2d 39 (N.H. 1954).

In *Finneran* the Maryland Court of Appeals noted:

". . . That horses are not especially intelligent, that they are easily startled or frightened, that their principal means of defense is to kick, although not now widely known, have for centuries been among the simple facts of life. . . . Whether mares are unaware of the melancholy plight of geldings is a matter beyond our ken but that mares sometimes will kick at frisky male horses, whether gelded or not, is fairly common knowledge." 241 A.2d at 581, 582.

While the majority is not aware of the propensity of horses to fight and bite each other, at least one standard reference recognizes the characteristic. In the World

Book Encyclopedia, vol. 9, at 315, 316, the following is stated:

"Horses are timid and easily frightened. But they can be taught to trust man, and to depend on him. A horse may often be frightened by the appearance of a strange object. Its fear disappears quickly if it is allowed to sniff the object while someone reassures it quietly.

"*Horses have strong likes and dislikes, especially toward other horses.* Before horses are teamed, or worked together, they are usually put in adjoining stalls so they can become used to each other." (Emphasis supplied.)

It certainly would have been better for evidence to have been offered on the issue of the propensity of horses—especially in view of the difference of viewpoint on this Court. I accept the position of the Court of Appeals that judicial notice can be taken of the characteristics normal for this class of animal. The harm which occurred resulted from actions normal to that class of animal.

CAMERON, C. J., concurs.