580 P.2d 757

**SAFFORD ANIMAL HOSPITAL, a professional corporation, Appellant,**

v.

**Kenneth BLAIN, Appellee.**

**No. 2 CA–CIV 2681.**

Court of Appeals of Arizona, Division 2.

April 7, 1978.

Rehearing Denied May 2, 1978.

Review Denied June 6, 1978.

Robbins, Green, O'Grady & Abbuhl by Robert H. Green and William H. Sandweg, III, Phoenix, for appellant.

Anderson, Welker & Williams by Jack M. Williams, Safford, Kenneth L. Allen, Tucson, for appellee.

## OPINION

HOWARD, Judge.

The trial court, sitting without a jury, awarded appellee the sum of $62,500 for personal injuries suffered as a result of being struck by a cow which had escaped from appellant's premises. The facts considered in the light most favorable to sustaining the court's judgment are as follows. Ruben McBride, an employee of the Cluffs, who were defendants below, took one of their cows which was having difficulty calving to the Safford Animal Hospital. When he arrived, he went to the office and informed an employee that he had a cow that needed to be seen by the veterinarian. The employee told McBride that the vet was not there and that he was to put the animal in one of the pens in back of the hospital. McBride did so, making sure that the gates to the pen were secure. The pen in which McBride placed the cow was made of vertical pieces of metal pipe set in the ground with horizontal pieces of pipe welded to them. The fence stood approximately 6½ feet tall. The gates were also made of pipe and could be locked by sliding a metal bolt into a hole in the adjoining piece of pipe. The testimony below was that the cow could not have escaped from the pen if the gates were bolted.

About half an hour later, the veterinarian, Dr. Lucas, came to the hospital to keep an appointment with a local farmer who had a calf which needed treatment. At that time there was no cow in the pen. Since the veterinarian had not checked with the office, he did not know that McBride had left a cow. While Dr. Lucas was treating the calf, a neighborhood child came and told him that there was a cow loose by his house. At first Dr. Lucas did not believe that the cow could have come from the hospital because of his lack of knowledge that McBride had brought a cow on the

premises. Eventually Dr. Lucas went to the Blain premises where he spotted the Cluff cow. The Blain property was in a no fence district. After a discussion with Mr. Blain, it was decided that the cow could be placed in a pasture north of the Blain house. Dr. Lucas proceeded to attempt to herd the cow towards the pasture, aided by Mr. Blain who was helping without request by Dr. Lucas. Mr. Blain was 57 years old, had a hearing difficulty and a severe eye injury. In order for the cow to get to the north pasture, she had to pass between two outbuildings behind the Blain residence. Dr. Lucas herded the cow between these outbuildings. Mr. Blain, who had picked up a stick, attempted to run across the opening between buildings so as to prevent the cow from turning to her left when she reached the end of the passage between the buildings. Dr. Lucas observed some movement through the cracks in the outbuildings to his right and saw Mr. Blain moving to the west. He shouted to Mr. Blain, "Look out. Here she comes." Because of his hearing difficulty, Mr. Blain did not hear the warning and was struck by the cow a number of times and knocked into the base of a tree.

There was no evidence as to how the cow managed to escape from the hospital pen. There was also no evidence as to the condition of the gates of the pen either when Dr. Lucas arrived to treat the calf or when he finally managed to bring the cow back to the hospital.

Appellant presents the following questions for review:

"A. Can the trial court, sitting as trier of fact, enter judgment against a veterinary hospital based upon the acts of an agent who was a licensed veterinarian, where plaintiff alleges negligent failure to confine and control an animal and negligent failure to warn, in the absence of any proof as to the standard of care to be met by a reasonable and prudent veterinarian or veterinary hospital under similar circumstances?

B. Can the doctrine of res ipsa loquitur be applied to establish negligence against one defendant where a second defendant, who shared exclusive control with the first defendant, receives a judgment against plaintiff on the very same issue?

C. Is there any duty on the part of a veterinarian to warn an adult, knowledgeable about cattle, of the normal dangers associated with attempting to herd a cow?"

■ In its first question appellant attempts to equate this case with a "medical malpractice" case. That is not the case here. Appellant's liability is predicated upon its position as an owner or occupier of land whose duty with regard to the keeping of domestic animals is circumscribed by the Restatement of Torts Sec. 518:

" . . . [O]ne who possesses or harbors a domestic animal, which he does not have reason to know to be abnormally dangerous but which is likely to do harm unless controlled, is subject to liability for harm done by such animal if, but only if,

(a) he fails to exercise reasonable care to confine or otherwise control it, and

(b) the harm is of a sort which it is normal for animals of its class to do. * * * "

See also, *Vigue v. Noyes,* 113 Ariz. 237, 550 P.2d 234 (1976).

■ The foregoing subsection is applicable to domestic animals such as cows, which (1) can be confined to the premises of their keepers or otherwise kept under control without seriously affecting their usefulness and (2) are not abnormally dangerous. The owner or keeper is required to know the normal habits and tendencies of animals of the class, realizing that even ordinarily gentle animals are likely to be dangerous under particular circumstances. There was testimony below that the reaction of the Cluff cow was a normal one for a cow of its class.

■ As for the doctrine of res ipsa loquitur, appellant contends that since appellee relied on the doctrine to show the negligence of both the Cluffs and the hospital and contended that they both had joint exclusive control, the judgment in favor of the Cluffs is inconsistent with liability un-

der the doctrine on the part of the hospital. Therefore, when the court entered a judgment in favor of the Cluffs there was an implied finding of no negligence under the doctrine on appellant's part. We do not agree.

After McBride left the cow in the pen, it was then under the exclusive control of the hospital. There was no joint control when the animal escaped. The trial court could well have believed from the evidence that McBride properly secured the gates of the pen, thus leaving an inference of negligence on the part of the hospital.

Since we believe the evidence would support the court's finding appellant negligent under the doctrine of res ipsa loquitur, it is unnecessary to discuss the last question for review presented by the hospital.

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.