585 P.2d 1250

**Claudia JONES, now known as Claudia Palmer, Plaintiff/Appellee,**

v.

**Paul MANHART, Defendant/Appellant.**

**No. 2 CA–CIV 2877.**

Court of Appeals of Arizona,
Division 2.

Sept. 21, 1978.

Law Offices of O'Dowd & Burke by Bruce A. Burke, Tucson, for plaintiff/appellee.

Bilby, Shoenhair, Warnock & Dolph, P. C. by David A. Paige, Tucson, for defendant/appellant.

## OPINION

HATHAWAY, Judge.

On March 18, 1976, appellee Claudia Jones, now known as Claudia Palmer, was bitten by a dog owned by appellant Paul Manhart when she was on private property at 1908 W. Saxony. This was the residence of appellant, who was not home at the time. Ms. Palmer had entered the premises while conducting a door-to-door private commercial survey. She entered unannounced and without prior invitation. Her purpose was to interview female heads of household regarding the use of a chicken coating product. The yard was unfenced in front. As she approached the front door, she observed the dog barking at her with his nose pressed against the front window. She also saw a "cartoon type" sign depicting a dog's head with teeth bared saying, "Trespassers will be eaten".

Ms. Palmer rang the doorbell or knocked and spoke briefly with appellant's roommate. Immediately upon opening the door, the roommate requested Ms. Palmer to allow him a moment to place the dog in another room of the house. He left and shortly thereafter, returned without the dog. Upon ascertaining that there was no female head of household, appellee began to leave. While she was still on the premises, she was knocked down and bitten by appellant's dog. The bite caused injuries to her right elbow which consisted of lacerations and deep punctures requiring stitches. At the time of trial, she had a scar on her elbow.

Appellee Palmer filed a complaint against Mr. Manhart which stated several different theories of liability and requested both compensatory and punitive damages. Counts I and V of her complaint were submitted to the jury. Count I alleged that appellant was strictly liable for the damages caused by his dog under the common law theory set forth in § 509 of the Restatement (Second) of Torts. Count V alleged that appellant's conduct had been wilful and reckless and therefore he was liable for punitive damages. The jury awarded $5,000 compensatory damages and $5,000 punitive damages to appellee. After denial of appellant's motion for judgment n. o. v., his appeal was filed.

■ Appellant contends that the common law tort set forth in § 509 of the Restatement (Second) of Torts has been supplanted by the following statutes which impose strict liability for dog bites in certain circumstances. A.R.S. § 24–521 states:

"The owner of a dog which bites a person when the person is in or on a public place

or lawfully in or on a private place, including the property of the owner of the dog, is liable for damages suffered by the person bitten, regardless of the former viciousness of the dog or the owner's knowledge of its viciousness."

A.R.S. § 24–522 explains that a person is lawfully present in a private place when he is "an invitee or a guest, or when in the performance of a duty imposed upon him by law . . . ." This definition does not include all licensees. A.R.S. § 24–378 additionally imposes strict liability for personal injuries and damages inflicted by a "dog while at large". The term "at large" is defined by A.R.S. § 24–361(2) to mean "neither confined by an enclosure nor physically restrained by a leash". Section 509 of the Restatement (Second) of Torts provides:

"Harm Done by Abnormally Dangerous Domestic Animals

(1) A possessor of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing the harm."

Arizona recognized this tort in *Perazzo v. Ortega*, 32 Ariz. 154, 256 P. 503 (1927), and the rule has never been expressly overturned. Appellant relies heavily on *Vigue v. Noyes*, 113 Ariz. 237, 550 P.2d 234 (1976). *Vigue* involved injuries caused by a horse. The Arizona Supreme Court stated:

"The possessor of a domestic animal other than a dog may be subject to liability under either a strict liability or negligence theory for harm caused by it to others." 113 Ariz. at 239, 550 P.2d at 236.

Appellant argues that this is a specific pronouncement that the Arizona dog bite statutes abrogate the common law theory of strict liability. We do not agree. The court in *Vigue* was dealing with an injury caused by a horse and simply excluded dogs from the ambit of the opinion because of the specific statutes dealing with dogs.

■ The Arizona Supreme Court has looked to the Restatement only in the absence of prior Arizona decisions or legislative enactments. *Smith v. Normart*, 51 Ariz. 134, 143, 75 P.2d 38, 42 (1938). The rationale for this rule is to promote uniformity of decision. *Smith v. Normart*, supra. It is also a well-accepted doctrine that a court will not construe a statute as impliedly repealed if it can avoid such construction. E. g., *State v. Rice*, 110 Ariz. 210, 516 P.2d 1222 (1973); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Truck Ins. Exchange*, 107 Ariz. 291, 486 P.2d 773 (1971); *State ex rel. Purcell v. Superior Court In and For County of Maricopa*, 107 Ariz. 224, 485 P.2d 549 (1971).

■ This court must follow the principle that "statutes are not to be construed as effecting any change in the common law beyond that which is clearly indicated. . . . If possible, statutory enactments should be construed as consistent with the common law." *Kilmer v. Hicks*, 22 Ariz.App. 552, 553, 529 P.2d 706, 707 (1975); *In re Thelen's Estate*, 9 Ariz.App. 157, 450 P.2d 123 (1969); *Tucson Gas & Electric Co. v. Schantz*, 5 Ariz.App. 511, 428 P.2d 686 (1967).

■■ The Arizona statutes are not, as appellant argues, codifications of the common law totally replacing the prior strict liability theory. Instead, they evince a legislative intent to extend strict liability for the benefit of specified persons to dog owners where the owner has no knowledge of the vicious propensities of the animal. The common law protects a licensee on private property who is bitten by a dog of known viciousness even where that dog is restrained by a leash. The Arizona statutes do not extend this protection to licensees. Thus, the coverage of the statutes is not identical to that of the common law Restatement (Second) of Torts, § 509.

We conclude that the purpose of the dog-bite statutes was to expand the common law protection, not to diminish it. Thus, we hold that as to persons not specified in the statutes, the enactment of A.R.S. § 24–521, et seq. and A.R.S. § 24–378 did not impliedly abrogate the common law rule imposing strict liability for dog bites.

Appellant insists that § 509 of the Restatement extends no protection to appellee because she was a trespasser at the time she was bitten. Section 511 of the Restatement (Second) of Torts excludes trespassers from the protection of § 509:

"A possessor of land is not subject to strict liability to one who intentionally or negligently trespasses upon the land, for harm done to him by . . . an abnormally dangerous domestic animal that the possessor keeps on the land, even though the trespasser has no reason to know that the animal is kept there."

However, § 509 does extend to licensees and invitees. Section 513, as appellee points out, protects "persons coming upon the land in the exercise of a privilege whether derived from his (the animal possessor's) consent to their entry or otherwise".

Section 329 of the Restatement defines a trespasser as "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise". The Arizona Supreme Court accepted this definition of trespasser in *Barry v. Southern Pacific Co.*, 64 Ariz. 116, 166 P.2d 825 (1946).

Appellee Palmer entered upon the property at 1908 W. Saxony with the implied consent of the possessors of the property. According to § 330, comment e, consent to enter can be created otherwise than by words. There was nothing putting appellee on notice that she could not come up the walk and knock on the door. The sign with the legend "Trespassers will be eaten" could be reasonably interpreted as a joke. Appellee attempted to communicate with the occupants of the building at the front door, which is a place where she impliedly had a right to be.

The question of punitive damages was properly submitted to the jury in view of the history of the dog's viciousness and appellant's continued retention of it.

Affirmed.

RICHMOND, C. J., and HOWARD, J., concur.